IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LAYNE CHRISTENSEN COMPANY, )
)
          Plaintiff, )
)
v. ) Case No. 09-2381-JWL
)
THE PUROLITE COMPANY, )
)
          Defendant. )
)
_____)

## **MEMORANDUM AND ORDER**

Plaintiff Layne Christensen Company asserts claims for copyright infringement and breach of contract against defendant The Purolite Company. This matter presently comes before the Court on defendant's motion (1) for a transfer of venue and (2) to join a necessary party or dismiss the patent claim for failure to join (Doc. # 13). For the reasons set forth below, the motion is **granted in part and denied in part**. The Court in its discretion denies defendant's motion for transfer of venue. The Court agrees with defendant that plaintiff has failed to join the patentee in this action as required, and plaintiff is ordered to file, by **December 18, 2009**, an amended complaint joining the patentee as a party to this action.

## I. **Background**

Plaintiff is a Delaware corporation with its principal place of business in Kansas. In November 2007, plaintiff purchased the assets of SolmeteX, Inc. ("SolmeteX"), a Delaware corporation with its principal place of business in Northborough, Massachusetts, near Boston. Plaintiff brings these claims against defendant as the successor-in-interest to SolmeteX. Defendant is a Delaware corporation with its principal place of business in Bala Cynwyd, Pennsylvania, near Philadelphia.

In November 2003, SolmeteX entered into a License Agreement with Arup SenGupta, an individual residing in Bethlehem, Pennsylvania, by which Mr. SenGupta granted SolmeteX an exclusive license to make and use certain products and technology relating to the removal of contaminants from liquids. On November 6, 2007, United States Patent No. 7,291,578 ("the Patent") was issued to Mr. SenGupta relating to this technology.

In November 2004, SolmeteX entered into an agreement with defendant, under which defendant would manufacture and distribute a product consisting of resin beads used to remove arsenic from aqueous streams. Plaintiff alleges that defendant breached its agreement with SolmeteX by failing to pay certain royalties. In a declaration submitted in support of its motion, defendant concedes that it stopped paying royalties, but it asserts that it did so after SolmeteX breached the agreement by marketing

2

competing products.[1] Plaintiff also alleges that defendant has infringed the Patent, apparently by continuing to sell the product after termination of the agreement between defendant and SolmeteX.

## II.     Transfer of Venue

Defendant seeks a transfer of this action to the United States District Court for the District of Delaware, pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Id.*[2] Section 1404(a) affords the district court broad discretion to adjudicate motions to transfer based upon a case-by-case review of convenience and fairness. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (citing *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). The "party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient," and "unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992). A court should consider the following factors in determining whether to transfer a case:

---

[1]Defendant has not yet filed an answer or asserted any counterclaims.

[2]Plaintiff does not dispute that this action might have been brought in the District of Delaware.

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1516 (quoting *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).

The Court concludes in its discretion that defendant has not shown either that the present forum is particularly inconvenient or that the balance is so strongly in its favor that this case represents the rare case in which the plaintiff's choice of forum should be disturbed. Accordingly, the Court denies defendant's motion to transfer this action to the District of Delaware.

Defendant suggests that the first factor, the plaintiff's choice of forum, should not weigh heavily in plaintiff's favor here because the dispute is really between defendant and SolmeteX (neither located in Kansas), with plaintiff merely stepping into SolmeteX's shoes as the successor-in-interest. The Court rejects this argument for a number of reasons. Neither plaintiff's complaint nor defendant's declaration make clear the timing of the alleged breaches of contract and patent infringement; thus defendant has not shown that all of the relevant conduct at issue occurred prior to plaintiff's acquisition of SolmeteX's business. Moreover, defendant has not cited to any authority suggesting that a successor plaintiff's choice of forum is entitled to less deference and

4

may be overcome more easily under section 1404(a). Nor has defendant cited to any authority suggesting that a plaintiff must relate the wrongful conduct to the forum state in order to receive this deference.

Defendant next argues that Delaware would be more convenient for five of plaintiff's employees and five employees of SolmeteX who are likely to be witnesses in the case. First, the Court rejects defendant's argument as it relates to the SolmeteX employees, who are under the control of plaintiff. A plaintiff can certainly be expected to have considered all of its costs and burdens in selecting its forum, including those to its employees. Plaintiff can compel the cooperation of its own employees, and the Court is unwilling in this case to undercut the deference accorded to a plaintiff's choice of forum based on the location of plaintiff's employee-witnesses.

Plaintiff objects to defendant's reliance on its own five employee-witnesses, arguing that defendant has not provided sufficient information concerning those witnesses as required by the Tenth Circuit in *Scheidt*. In that case, the court noted that although certain witnesses may have had pertinent testimony, the defendant had not submitted anything "to indicate the quality or materiality of the testimony" of those witnesses, nor had the defendant shown that they were unwilling to come to trial in that forum, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary. *See Scheidt*, 956 F.2d at 966. In the present case, defendant has identified the general subjects on which each of those five employees might testify, but it has not explained why any employee's testimony is particularly

relevant or material, or how crucial any particular employee's testimony might be. Nor has defendant indicated that any of its employee-witnesses are unwilling to come to Kansas or explained why deposition testimony would not suffice for any of them. Defendant argues that these latter considerations regarding attendance at trial are less important for witnesses within the control of a party; by the same token, however, the inconvenience for employees of a party is not as great as for other witnesses, since the employees may be compelled to attend by the party as a part of their jobs. To the extent that the inconvenience of employee-witnesses should be considered, defendant should show why their attendance at trial is absolutely necessary, and defendant has failed to make such a showing with respect to any of its five employee-witnesses.

Defendant also argues that two non-party witnesses would be subject to the compulsory process of the court in Delaware. First, defendant refers to the patentee, Mr. SenGupta, who lives in Pennsylvania. Any concern about compelling Mr. SenGupta's attendance is obviated, however, by the fact that Mr. SenGupta must be joined as a party in this suit, as explained below. *See infra* Part III. Moreover, Defendant has not adequately explained why the patentee and inventor must be present to give testimony at trial, as opposed to appearing by deposition. Defendant also argues that a former employee, Jim Sabzali, whom defendant has sued for stealing trade secrets, would be an unfriendly witness whose attendance at trial would need to be compelled. Defendant has indicated that Mr. Sabzali was involved in the drafting and execution of its agreement with SolmeteX. Again, however, defendant has failed to determine whether Mr. Sabzali

6

would be willing to come to Kansas to testify at trial, and it has failed to explain why his testimony is particularly important and not cumulative or why a deposition would not suffice (other than to suggest conclusorily that live testimony of an unfriendly witness is always better).

Defendant has not demonstrated that any other factors weigh in favor of transfer here. The Court rejects the suggestion that Kansas, where plaintiff is located, would not be as fair and neutral a forum as Delaware, near defendant's headquarters. The Court also rejects defendant's argument based on the underlying agreement's provision that Delaware law governs, as defendant has failed to show that the case involves any particularly complex or novel issues of Delaware law more ably handled by a court in that state. *See Scheidt*, 956 F.2d at 966 (applicability of other state's law not significant in light of relative simplicity of legal issues involved).

In summary, the Court does not believe that the potential involvement of a few of defendant's employees and a single non-party witness residing elsewhere distinguish the present case from the usual modern-day business litigation so strongly that plaintiff's choice of forum should be disturbed. Accordingly, the Court denies defendant's motion for transfer of venue.

### III.     **Statutory Standing and Required Joinder of the Patentee**

In its motion, defendant also argues that plaintiff does not have standing to sue for patent infringement by itself, and that Mr. SenGupta, the patentee, must therefore be joined as a party to the action pursuant to Fed. R. Civ. P. 19, or else the patent claim

must be dismissed pursuant to Fed. R. Civ. P. 12(b)(7). Plaintiff responds that it is entitled to assert the patent claim itself without the patentee from whom it holds an exclusive license (as successor to SolmeteX).

The Federal Circuit Court of Appeals has set forth the law governing this issue as follows:

> Standing to sue is a threshold requirement in every federal action. Standing must be present at the time the suit is brought. The party bringing the action bears the burden of establishing that it has standing.
>
> The Patent Act provides that "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281 (2000). The term "patentee" comprises "not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d) (2000). However, if the patentee transfers all substantial rights under the patent, it amounts to an assignment and the assignee may be deemed the effective patentee under 35 U.S.C. § 281 for purposes of holding constitutional standing to sue another for patent infringement in its own name.
>
> Under 35 U.S.C. § 100, therefore, the owner of a patent or the owner's assignee can commence an action for patent infringement, but a licensee alone cannot, unless the licensee holds "all substantial rights" in the patent. A nonexclusive license confers no constitutional standing on the licensee to bring suit or even to join a suit with the patentee because a nonexclusive licensee suffers no legal injury from infringement. An exclusive licensee receives more rights than a nonexclusive licensee, but fewer than an assignee. An example of an exclusive licensee is a licensee who receives the exclusive right to practice an invention but only within a given limited territory.
>
> While a licensee normally does not have standing to sue without joinder of the patentee (to prevent multiplicity of litigation), an exclusive license may be treated like an assignment for purposes of creating standing if it conveys to the licensee all substantial rights. This court has defined "all substantial rights" as those rights sufficient for the licensee or assignee to be deemed the effective patentee under 35 U.S.C. § 281. Each

> license and assignment is unique, therefore this court must ascertain the intention of the parties and examine the substance of what the licensing agreement granted to determine if it conveys all of the substantial rights in the patent and is sufficient to grant standing to the licensee.

*Sicom Sys. Ltd. v. Agilent Tech., Inc.*, 427 F.3d 971, 975-76 (Fed. Cir. 2005) (footnote and non-statutory quotations and citations omitted). In this case, SolmeteX (and therefore plaintiff, as successor) did not receive an assignment of the Patent from Mr. SenGupta, the patentee, but rather received an exclusive license to make and use the patented invention. Thus, plaintiff can allege an injury sufficient to create constitutional standing, and may at least join in an infringement suit. The Court must examine the License Agreement to determine whether it conveyed all substantial rights in the Patent to Solmetex, such that plaintiff may be deemed an assignee of the Patent and sue for infringement without joinder of the patentee in the suit.

The License Agreement granted SolmeteX "an exclusive, worldwide, royalty-bearing license . . . to practice all methods and processes claimed or disclosed" in the Patent." Notwithstanding that exclusive license, the patentee retained a royalty-free right to make and use the licensed technology and products "solely for non-commercial research, teaching or other scientific or academic purposes." SolmeteX was given the right to grant sublicenses, but SolmeteX remained responsible for the operations of any sublicensee relevant to the agreement, including the payment of royalties to the patentee from the sublicense. In consideration for the license, the patentee was granted the right to receive as royalties a percentage of net sales of licensed products by SolmeteX and

9

its sublicensees. The patentee was required to prepare, file, and prosecute the patent application for the Patent. The License Agreement did not grant ownership in the Patent or require assignment of the Patent after issuance to SolmeteX.

The License Agreement also gave SolmeteX the "right to determine what actions, if any, to take against" any infringer of the licensed technology, with the patentee required to assist SolmeteX as reasonably requested in any enforcement action. The agreement further provided that neither party could settle or compromise any enforcement suit or action against an infringer without written consent of the other party to the License Agreement, which consent could not be unreasonably withheld or delayed. The agreement provided that if SolmeteX and its sublicensees completely ceased or ceased for nine months the manufacture and sale of the licensed products after first selling such products, then Solmetex had to grant the patentee a non-exclusive sublicense to make and sell the products. Finally, Solmetex was prohibited from assigning the agreement without the patentee's prior consent, except in connection with the sale or transfer of SolmeteX's business.

In arguing that the License Agreement conveyed all substantial rights in the Patent to SolmeteX as an exclusive licensee, plaintiff relies on SolmeteX's exclusive right under the agreement to bring suit and otherwise enforce the Patent against infringers. In *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870 (Fed. Cir. 1991), the Federal Circuit found the transfer of such a right to be "particularly dispositive" in that case, involving the ultimate question of whether the licensee could

10

sue without joining the patentee, in light of the joinder requirement's policy of preventing "the possibility of two suits on the same patent against a single infringer." *Id.* at 875-76. In *Sicom*, the Federal Circuit reiterated that "an important substantial right is the exclusive right to sue for patent infringement." *Sicom*, 427 F.3d at 979.

In a few cases in which the Federal Circuit ruled that joinder of the patentee was required, the court gave significance to the fact that the licensee did not have the exclusive right to sue an infringer in all cases. In *Sicom*, for instance, the licensee relied on the fact that it had been granted the exclusive right to sue for commercial infringement. *See id.* Nevertheless, the court noted that under the license agreement, a single infringer could nevertheless be vulnerable to multiple suits for *non-commercial* infringement. *See id.* It did not matter that the case before it involved commercial infringement only; the entirety of the agreement and the intention of the parties regarding all possible suits were relevant factors in determining whether all substantial rights in the patent had been conveyed. *See id.* Thus, the licensee did not have the power to indulge infringement in all cases. *See id.*; *see also Abbott Laboratories v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995) (although licensee had right of first refusal to sue infringers, patentee could sue if licensee chose not to; thus, licensee did not enjoy "the right to indulge infringements, which normally accompanies a complete conveyance of the right to sue"); *Intellectual Property Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1344 (Fed. Cir. 2001) (under agreement, patentee retained right to consent to litigation whenever a "necessary" party; thus patentee retained right to permit

11

infringement in some cases).

In the present case, defendant does not dispute that, under the License Agreement, SolmeteX was granted the exclusive right to determine what action to take, if any, with respect to an infringer, including filing suit. Thus, plaintiff was granted the full right to indulge infringement, and this factor weighs in favor of plaintiff and a finding that all substantial rights in the patent were indeed transferred to SolmeteX.

Defendant argues that this right was limited by the provision requiring the patentee's consent to any settlement by SolmeteX with an alleged infringer. *See, e.g.*, *Sicom*, 427 F.3d at 979 (fact that licensee could not settle litigation without consent of patentee supported ruling that licensee did not receive all substantial rights in the patent). The License Agreement further provides, however, that such consent cannot be withheld unreasonably, and the Federal Circuit has previously concluded that the existence of such a consent provision is a neutral factor because it does not significantly restrict the licensee's patent rights. *See Intellectual Prop.*, 248 F.3d at 1344 n.12.

In light of this exclusive right to sue infringers and indulge infringement, plaintiff argues that the Court should follow *Vaupel*, in which joinder was not required. In *Vaupel*, however, the court found the transfer of the exclusive right to sue to be "particularly dispositive" in that case given the lack of any substantial rights retained by the patentee. *See Vaupel*, 944 F.2d at 875. For instance, the court found that a retained right to veto sublicenses was only a "minor derogation from the grant of rights;" that a reversionary right to the patent in the patentee in the event of the licensee's bankruptcy

12

or termination of production was still consistent with an assignment; and that the patentee's right to receive infringement damages was merely a means of compensation under the license agreement. *See id.*

In the present case, however, defendant points to certain rights retained by the patentee. The most significant of these is the patentee's right to consent to any assignment of the License Agreement by SolmeteX in a situation not involving the sale of SolmeteX's business. Notably, that provision is not tempered by any requirement that the patentee not withhold such consent unreasonably. The Federal Circuit has consistently and prominently cited the retention of such a right in finding that not all substantial rights have been transferred by patentees in particular cases. For instance, in *Abbot Laboratories*, the court distinguished *Vaupel* in part because the patentee in its case retained the right to prevent the licensee from "assigning its rights under the license to any party other than a successor in business." *See Abbot Labs.*, 47 F.3d at 1132; *see also Intellectual Prop.*, 248 F.3d at 1345 (citing *Abbot Laboratories* in recognizing that "limits on the assignment of rights are a factor weighing in favor of finding a transfer of fewer than all substantial rights"). Subsequently, in *Sicom*, the court used stronger language, finding that this restriction on the right to assign was a "fatal reservation" of rights by the patentee. *See Sicom*, 427 F.3d at 979. In *Propat International Corp. v. RPost, Inc.*, 473 F.3d 1187 (Fed. Cir. 2007), the court found the patentee's right to veto any transfer of the licensee's rights to be "particularly significant" because "[t]he right to dispose of an asset is an important incident of ownership, and such a restriction on that

13

right is a strong indicator that the agreement does not grant [the licensee] all substantial rights under the patent." *See id.* at 1191 (citing *Sicom*, 427 F.3d at 979; *Intellectual Prop.*, 248 F.3d at 1345; *Abbot Labs.*, 47 F.3d at 1132). The *Propat* court then specifically noted that in *Sicom* it had referred to such a restraint on the transferability of rights under the license agreement as "'fatal' to the argument that the agreement transferred all substantial rights in the patent." *See id.* (citing *Sicom*, 427 F.3d at 979).[3]

Thus, in the present case, the Court must weigh the patentee's retention of the right to consent to any assignment other than as a transfer of SolmeteX's business against SolmeteX's exclusive right to sue. As noted above, in *Abbot Laboratories*, *Intellectual Property*, and *Sicom*, in which the Federal Circuit required joinder of the patentee, the licensee had not received a truly exclusive right to sue. In *Propat*, on the other hand, the licensee did enjoy the exclusive right to sue, but the court nevertheless held that the patentee had not transferred all substantial rights in the patent to the licensee, in light of the retention of the right to consent to an assignment and other rights. *See id.* at 1190-93. For example, the court cited the patentee's retained ownership of the patent; the patentee's continuing economic interest in the patent through a right to certain proceeds from the exploitation of the patent; the patentee's right to notice of sublicensing and litigation decisions, and the right to veto such decisions as long as not done so

---

[3]In *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000), the court distinguished *Abbot Laboratories* on the basis that in its case the patentee could not withhold consent to an assignment unreasonably. *See id.* at 1251. In the present case, as noted above, the patentee's right to consent to any assignment is not so restricted.

14

unreasonably; and the patentee's right to terminate the contract if certain benchmarks were not met by the licensee. *See id.* at 1191. The court concluded that such rights were indicative of ownership and therefore the license agreement did not constitute an assignment of patent rights sufficient to allow the licensee to sue without the patentee. *See id.* at 1191-92.

In light of *Propat* and the other cases cited above, the Court concludes that an exclusive licensee's exclusive right to sue infringers and control that litigation is not enough in and of itself to meet the statutory standing requirement—that factor is not necessarily dispositive—if other rights have been retained by the patentee to the extent that that not all substantial rights have been conferred on the licensee. That is especially true in a case involving a retained right to consent to an assignment of the license agreement, as demonstrated by the Federal Circuit's strong language in evaluating that factor. Indeed, plaintiff has failed to cite to any case in which the Federal Circuit has permitted a licensee to sue without the patentee despite the patentee's retention of this right to consent to assignments.

Moreover, the Court notes that the patentee did retain other rights in the present case. Under the License Agreement, the patentee retained the right to use the patented technology for his own non-commercial purposes. *See Abbot Labs.*, 47 F.3d at 1132 (patentee retained a limited right to make, use, and sell products embodying the patented inventions). The patentee did not grant SolmeteX ownership in the patent or an assignment of all rights under the Patent, which indicates that ownership remained with

15

the patentee; in fact, the agreement required the patentee to apply for and prosecute the patent application, and the Patent was subsequently issued to the patentee. *See Propat*, 473 F.3d at 1191 (patentee retained ownership in the patent); *Sicom*, 427 F.3d at 979 (noting that the patentee retained legal title to the patent). Finally, the patentee retained a measure of equity in the Patent through his entitlement to royalties from sales by SolmeteX and any sublicensees and the provision permitting him to share in recoveries from enforcement activities. *See Propat*, 473 F.3d at 1191 (citing similar rights retained).[4]

Based on these additional retained rights, the Court concludes that the present case most closely resembles *Propat*, one of the most recent decisions on this issue from the Federal Circuit. Accordingly, the Court concludes that the patentee's retention of the right to consent to an assignment, together with the other retained rights, demonstrate that the patentee did not transfer all substantial rights in the Patent to SolmeteX, despite the grant to SolmeteX of the exclusive right to sue infringers.

Thus, the patentee, Mr. SenGupta, must be joined in this action pursuant to Rule 19. *See, e.g.*, *Abbot Labs.*, 47 F.3d at 1133 (joinder of patentee as required for statutory standing is consistent with the policies underlying Rule 19). Pursuant to that rule, the

---

[4]Defendant also cites the patentee's right to a sublicense in the event that SolmeteX ceased sales completely or for a period of nine months. Although in *Propat* the Federal Circuit appeared to rely on a similar provision in requiring joinder, that court had previously held in *Vaupel* that such termination provisions were consistent with an assignment. Thus, the Court finds this factor to be neutral in the present case.

Court orders that Mr. SenGupta be made a party to this action. *See* Fed. R. Civ. P. 19(a)(2). Plaintiff shall file an amended complaint joining Mr. SenGupta as a party to this action by December 18, 2009. *See Intellectual Prop.*, 248 F.3d at 1346-49 (failure to join patentee may be cured by amended complaint). If Mr. SenGupta will not join voluntarily, he shall be added as an involuntary plaintiff, and plaintiff shall effect service of process on Mr. SenGupta. If plaintiff fails to file an amended complaint by that date and further does not show good cause for that failure, the Court shall dismiss plaintiff's patent infringement claim.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion to transfer this action and to join a necessary party (Doc. # 13) is **granted in part and denied in part**. Defendant's motion for transfer is denied. Defendant's motion to join a necessary party is granted. Plaintiff shall file, by **December 18, 2009**, an amended complaint joining Arup SenGupta as a party to this action. If plaintiff fails to file such an amended complaint by that date and does not show good cause for its failure to do so, plaintiff's claim for patent infringement shall be dismissed.

IT IS SO ORDERED.

Dated this 4th day of December, 2009, in Kansas City, Kansas.

> s/ John W. Lungstrum
> John W. Lungstrum
> United States District Judge