**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

LAYNE CHRISTENSEN COMPANY,
and DR. ARUP SENGUPTA,

              Plaintiffs,                            CIVIL ACTION

v.                                          No. 09-2381-JWL-GLR

THE PUROLITE COMPANY,

              Defendant.

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion for Protective Order (doc. 37). It seeks a protective order, pursuant to Fed. R. Civ. P. 26(c), to limit the disclosure of confidential information produced during discovery in this patent infringement and breach of contract case. The parties agree that a protective order should be entered, but they disagree about its scope and some of its provisions. Specifically, they disagree whether a two–tier protective order is appropriate, which would allow the parties to designate some materials as limited to "Attorneys' Eyes Only." If the Court allows such an order, they disagree whether co-plaintiff and patent co-inventor, Dr. SenGupta, should have access to materials designated as "Attorneys' Eyes Only." They also disagree whether the order should require the parties to provide advance notice of the identity of any consultant or expert to whom the designated materials might be shown. As set forth below, the Court grants the motion in part and denies it in part.

## I.     Background Facts

By its amended complaint, Plaintiff Layne Christensen Company ("Layne") asserts claims for patent infringement and breach of contract against defendant The Purolite Company ("Purolite"). Plaintiff alleges that Defendant has infringed upon its patent for the manufacture and application of

hybrid anion exchangers for selective removal of contaminants from fluids. Plaintiff Layne, as the successor-in-interest to the company SolmeteX, also asserts a claim against Defendant for breach of an agreement with SolmeteX for the manufacture and supply of resin beads for removal of compounds that contain arsenic from water supplies.

On September 18, 2009, Defendant filed a Motion to Transfer and to Dismiss for Failure to Join a Party (doc. 15). It sought a dismissal, pursuant to Fed. R. Civ. P. 12(b)(7), for Plaintiff's failure to join a necessary party under Fed. R. Civ. P. 19. Defendant argued that Dr. Arup SenGupta, as the patent owner and licensor, is a necessary party. Dr. SenGupta is an inventor of the patent at issue. On December 4, 2009, the Court granted that motion in part and ordered Dr. SenGupta, as patentee, to be joined as a necessary party under Fed. R. Civ. P. 19.[1] Plaintiff thereafter filed an amended complaint (doc. 22), joining Dr. SenGupta as a plaintiff.

On March 4, 2010, Plaintiffs Layne and SenGupta submitted their proposed single-tier protective order to Defendant for review and comment. On March 23, 2010, counsel for Defendant responded with a modified, proposed protective order that would authorize a party to designate materials produced during discovery as either "Confidential" or "Attorneys' Eyes Only." Under such a two-tier classification, materials designated as "Attorneys' Eyes Only" would be more restricted as to who could view them. On March 24, 2010, counsel for Plaintiffs responded with an email, attaching a further revised draft. It retained the two-tier classification and the more restrictive disclosure limitations for "Attorneys' Eyes Only" materials. The email transmitting the revised draft noted three issues that remained outstanding: (1) waiver of attorney-client privilege documents that materially contradict a position of the producing party; (2) whether Dr. SenGupta should be

---

[1]Dec. 4, 2009 Mem. & Order (doc. 21).

prevented from viewing the "Attorneys' Eyes Only" documents; and (3) whether the parties should be required to give advance notice of intent to provide confidential documents to consultants and experts. On March 25, 2010, the attorney for Plaintiffs emailed yet another draft to defense counsel. It also retained the two-tier classification and the provision for "Attorneys' Eyes Only". The communication neither mentioned nor raised any issue about those provisions. On April 7, 2010, Defendant filed the instant Motion for Protective Order. The motion asks for the two-tier classification with the "Attorneys' Eyes Only" disclosure restrictions.

On April 13, 2010, the parties exchanged initial disclosures, pursuant to Fed. R. Civ. P. 26. They also agreed that they would abide by the terms of Defendant's proposed protective order, pending a ruling by the Court upon the instant motion. Later the same day Defendant served its responses to Plaintiff Layne's First Request for Production of Documents and produced 8,504 documents. All of the documents contained the designation "Confidential - Attorneys' Eyes Only."

On April 22, 2010, Plaintiffs filed their response in opposition to the instant motion. They argue that a two-tier protective order is unnecessary. They have submitted their proposed order, without two tiers, as sufficient to protect any sensitive information disclosed in this action.

## II.     The Standard for Issuing a Protective Order Limiting the Disclosure of Confidential Information

Federal Rule of Civil Procedure 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."[2]  The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by

---

[2]*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

discovery.[3]  Federal Rule of Civil Procedure 26(c) provides that the court, upon a showing of good cause, "may issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way."[4]  The party seeking a protective order has the burden to show good cause for it.[5]  To establish good cause, that party must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[6]

A special type of protective order, one that limits the disclosure, use, and dissemination of the parties' confidential information, also requires a showing of good cause under Rule 26(c).  For these types of protective orders, the party or parties seeking the protective order must provide a "concise but sufficiently specific recitation of the particular facts in this case that would provide the court with an adequate basis upon which to make the required finding of good cause pursuant to Fed. R. Civ. P. 26(c)."[7]

## III.    The Parties' Disputes Regarding their Proposed Protective Orders

The parties agree that a protective order is appropriate.  They both have critical investments in patents, other intellectual property, and sensitive competitive information, the disclosure of which would result in an immediate and severe financial hardship.  This litigation may include testimony

---

[3]*Id.*

[4]Fed. R. Civ. P. 26(c)(1)(G).

[5]*Sentry Ins. v. Shivers*, 164 F.R.D. 255, 256 (D. Kan. 1996).

[6]*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

[7]Scheduling Order (doc. 28), 7-8, ¶ 2.m.

and documentary evidence of confidential, proprietary and trade secrets and business records, confidential items related to each party's technology and other sensitive materials. Although they agree that a protective order is needed, they disagree on three issues: (1) whether the protective order should include an attorneys' eyes only provision; (2) whether plaintiff and patent co-inventor Dr. SenGupta should have access and be permitted to view materials designated as "Attorneys' Eyes Only"; and (3) whether the protective order should contain a provision requiring the parties to give advance notice to each other of the identity of any consultant or expert to whom they intend to disclose designated materials.

Defendant argues that the Court should enter a two-tier protective order that gives heightened protection for materials designated as "Attorneys' Eyes Only." It also proposes that co-plaintiff Dr. SenGupta should not be permitted to view materials it designates as "Attorneys' Eyes Only." Defendant also seeks a protective order provision that would require the parties to identify the consultants or experts to whom they intend to disclose designated materials.

In contrast, Plaintiffs argue that a two-tier protective order is unnecessary. If it is allowed, they suggest that the order specify only limited categories of documents that may be designated as "Attorneys' Eyes Only." They also contend that Dr. SenGupta, as a plaintiff and inventor of the patent at issue, should be permitted access to all materials designated as "Attorneys' Eyes Only." They further contend that the proposed requirement for advance identification of any expert or consultant is an unwarranted intrusion into their litigation strategy and would subvert the principles of fairness underlying Fed. R. Civ. P. 26(b)(4)(B).

**IV.     Discussion of the Issues Raised**

     **A.     Whether the protective order should include a provision to allow the parties to designate materials as "Attorneys' Eyes Only"**

          *1.     Whether Plaintiffs have waived the right to object to a two-tier protective order*

Defendant argues in its reply brief that Plaintiffs should be precluded from objecting to a two-tier protective order, because they previously agreed to it during the conferring process before Defendant filed the present motion.  According to Defendant, Plaintiffs never objected to a two-tier protective order and submitted their own proposed drafts that included the two-tier classification and heightened restrictions for materials designated for "Attorneys Eyes Only."  Defendant argues that Plaintiffs violate D. Kan. Rule 37.2 by raising their objection for the first time in their response to the motion.

Failure to confer generally serves as a basis for denying a discovery motion.[8]  Defendant argues that failure to confer should also serve as a waiver of an argument first asserted in response to such a motion.  District of Kansas Local Rule 37.2 provides in pertinent part that "[t]he court will not entertain any *motion* to resolve a discovery dispute . . . unless the *attorney for the moving party* has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to filing the motion."[9]  The rule permits the court to deny a discovery motion for failure to confer prior to filing it.  It places the duty to initiate the conferring process on the party making the motion.  It does not, as Defendant suggests, require the non-moving party to raise all objections and arguments during the conferring process.  Defendant has not otherwise cited any

---

[8]*See* Fed. R. Civ. P. 37(a)(1), D. Kan. Rule 37.2.

[9]D. Kan. Rule 37.2 (emphasis added).

6

authority or precedent for its argument that a non-moving party necessarily waives an argument by failing to assert it during the conferring process.

Although D. Kan. Rule 37.2 places the duty to initiate the conferring process on the moving party, the Scheduling Order entered in this case requires that counsel for all the parties confer in an attempt to submit a jointly-proposed protective order. The Court, however, does not find this requirement to support the argument of waiver.

It appears that Defendant relied upon the lack of an objection to the two-tier classification and the heightened disclosure restrictions for "Attorneys' Eyes Only" materials, nevertheless, when it filed the instant motion and produced documents marked as "Confidential - Attorneys' Eyes Only." This reliance does not justify precluding Plaintiffs from now objecting to the proposed two-tier provision. Plaintiffs do not dispute that they agreed to it during the conferring process. They explain it was only after Defendant designated each of the documents it produced as "Confidential - Attorneys' Eyes Only" that they reconsidered their position and objected to it. In light of these circumstances, the Court declines to find that Plaintiffs have waived a right to oppose Defendant's the two-tier classification and disclosure restrictions for "Attorneys' Eyes Only."

       2.       *Whether Defendant has shown good cause for a two-tier protective order*

The order proposed by Defendant would permit any party to mark Designated Materials as "Confidential." As an alternative, a producing party could mark Designated Materials for "Attorneys' Eyes Only," if it "claims in good faith that the Designated Material is of such a sensitive nature that the disclosure of such Designated Material would result in competitive injury to it."[10]

---

[10]Def.'s Proposed Protective Order, Ex. A to Def.'s Mem. of Law in Supp. of its Mot. for Protective Order (doc. 38-1), ¶ 2.

The proposed order defines "Designated Materials" as follows:

> any information designated by the producing party or non-party as CONFIDENTIAL, or ATTORNEYS' EYES ONLY, . . . and which comprises or contains information that the producing party claims in good faith to constitute or reveal trade secrets under applicable law, confidential and proprietary information, financial information, personnel information, or other information which in the ordinary course of business is neither available to the general public or the industry at large.[11]

Materials designated as "Attorneys' Eyes Only" would be available only to outside counsel of record, in-house counsel for each party, consultants or experts retained to consult or testify in the case, the original authors or recipients of a document, and the court, as well as providers of ancillary legal services, such as court reporters, videographers, and translators.

Plaintiffs object that the scope of the proposed protective order is overly broad. They contend that a narrowly tailored protective order that designates specific, defined categories of material is more appropriate. Their proposed protective order does not include any provisions for the designation of materials as "Attorneys' Eyes Only." They argue that a heightened level of protection is unnecessary because the parties had a licensing relationship by which they shared proprietary intellectual property, research and development, cost and sales data, and other sensitive information that will probably be subject to discovery in this case. They point out that the contract executed by Defendant and SolmeteX, which was subsequently acquired by Plaintiff Layne, expressly required Defendant to disclose monthly sales records, its books and records reflecting cost calculations and sales, detailed sales forecasts, the results of research and development concerning raw materials, manufacturing techniques, product performance, production and supply costs, any improvements, discoveries, changes, and intellectual property conceived by Defendant, and all

---

[11]*Id. at* ¶ 1.

manufacturing information.

Protective orders that limit the disclosure and use of confidential information produced by the parties during discovery have become common in litigation. The Scheduling Order sets a deadline, as well as the procedure for the parties to submit an agreed-upon protective order. Or, if the parties cannot agree, a deadline to file a motion for a protective order. In cases involving patent infringement and other claims relating to sensitive intellectual property, it is not uncommon for a protective order to have different levels, or tiers, of confidentiality, with each tier having different restrictions and protections, such as limiting the individuals who have access to the information.[12] Under the first tier, usually designated as merely "Confidential" information, the protective order prohibits the disclosure or dissemination of the information to third parties. Under the second tier, usually called "Attorneys' Eyes Only" or "Highly Confidential," the protective order places more restrictive limitations as to who has access to the information. This is usually reserved for more sensitive information, such as trade secret information, future product plans, competitive pricing, customer lists, or competitive business financial information.[13] Courts allowing these two-tier protective orders have generally allowed their entry to protect against business harm that would result from disclosure of sensitive documents to a competitor.[14] Such orders afford fuller protection

_____

[12]J. Christopher Carraway, *Discovery Issues in Patent Cases*, 982 PLI/Pat 419, 475-76 (Practising Law Inst. Sept.-Nov. 2009) ("Most patent cases have two tiers, such as "Confidential" for most information and a more restrictive "Attorneys' Eyes Only" for more sensitive information, such as future product plans, technical trade secrets, and financial information.").

[13]*Id.*

[14]*See A/R Roofing, L.L. C. v. Certainteed Corp.*, No. 05-1158-WEB, 2005 U.S. Dist. LEXIS 31145, at *9 (D. Kan. Dec. 5, 2005) (finding that disclosure of information that could place one party at a disadvantage in the marketplace supported an attorney-eyes-only provision); *Pulsecard, Inc. v. Discover Card Servs.*, No. 94-2304, 1995 U.S. Dist. LEXIS 13111, at *28 (D. Kan. Aug. 31, 1995) (finding that financial information and customer lists deserved attorney-eyes-only protection);

to technological information than that extended to ordinary business information.[15] Technical information is given a heavy cloak of judicial protection because of the threat of serious economic injury to the party disclosing scientific information.[16] The Ninth Circuit Court of Appeals has remarked that "[c]ourts could not function effectively in cases involving sensitive information — trade secrets, medical files and minors, among many others— if they lacked the power to limit the use parties could make of sensitive information obtained from the opposing party by invoking the court's authority."[17]

The Court finds that Defendant has shown good cause for a two-tier protective order. Protection of documents and information, by limiting their disclosure to "attorney's eyes only," may well be warranted for some types of materials in a case of alleged patent infringement, such as the instant action. Plaintiff Layne and Defendant Purolite appear to be business competitors in the technology that involves the patent in question. This litigation will probably involve disclosure of trade secrets and other information that could affect their competitive positions in the marketplace. A two-tier protective order that allows the parties in good faith to designate certain limited materials as "Attorneys' Eyes Only" constitutes a practical and cost-effective way to protect their respective interests in their most sensitive information from a competitor, while complying with their

---

*Netquote, Inc. v. Byrd*, Civ. A. No. 07-cv-00630-DME-MEH, 2007 WL 2438947 (D. Colo. Aug. 23, 2007) (finding attorney-eyes-only protections warranted where parties were direct competitors of each other); *Martinez v. City of Ogden*, No. 1:08CV00087TCDN, 2009 WL 424785, at *2 (D. Utah Feb. 18, 2009) (commenting that "[a]ttorney's-eyes-only protection is usually employed to protect against business harm that would result from disclosure of sensitive documents to a competitor").

[15]*Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.,* 682 F. Supp. 20, 22 (D. Del. 1988).

[16]*Id.*

[17]*Bittaker v. Woodford*, 331 F.3d 715, 726 (9th Cir. 2003).

obligations for discovery. The Court therefore grants the motion to allow two tiers of protection: for materials designated as "Confidential" and heightened protection for those designated as "Attorneys' Eyes Only."

Plaintiffs request that, if the Court allows a two-tier protective order as proposed by Defendant, that the protective order specify limit the categories of documents that a party may designate as "Attorneys' Eyes Only." Plaintiffs point out in their response that Defendant has already indiscriminately designated all of 8,504 documents it produced on April 13 as "Confidential-Attorneys' Eyes Only." They point to many documents that contain no sensitive or competitive information or that were exchanged by the parties prior to this litigation. They also point to publically available documents that Defendant designated as "Confidential - Attorneys' Eyes Only." These publically available documents include marketing materials and Frequently Asked Questions published on Defendant's website, and articles published in the Journal of the American Water Works Association and Environmental Science and Technology. They also include product specification sheets and marketing materials of non-parties, a SolmeteX Power Point presentation that shows Dr. SenGupta's research for arsenic removal from water, and what appears to be a photo of Plaintiff Layne's promotional display.

Defendant argues that its preliminary designation in its first production of documents should not affect its motion. It states it has since produced additional documents, designated at a lower level of confidentiality. It has, moreover, voluntarily re-designated many of the documents it produced on April 13, 2010.

Defendant's proposed protective order in its current form lacks adequate definition of what items would qualify for designation as "Attorney's Eyes Only." The Court agrees with the

suggestion of Plaintiffs to specifically limit the categories of materials for "Attorneys' Eyes Only." Neither Plaintiffs nor Defendant have provided adequate, specific suggestions. Paragraph 4 of the Declaration of Jacob W. Brodie in Support of Purolite's Motion for Protective Order,[18] however, contains the following itemization: "technical information related to the Product, research and development work, confidential pricing information, contracts with its suppliers and manufacturers, sales, marketing and strategic business information, and corporate financial information." The Court will adopt this list as the items that may be included within the category for "Attorney's Eyes Only," provided they are of such sensitive nature that disclosure would otherwise result in competitive injury to the producing party.

**B.      Whether Dr. SenGupta should be allowed access to materials designated as "Attorneys' Eyes Only"**

Defendant's proposed protective order would exclude co-plaintiff and patent inventor Dr. SenGupta from access to any materials it designates as "Attorneys' Eyes Only." It argues that, whether intentionally or unintentionally, he might use them for purposes other than this litigation. It fears he may be unable to forego the use of such information when he is working with its competitors, is engaged in research, or is furthering his own ideas for commercial purposes. Defendant suggests that Dr. SenGupta actively engages in research of water treatment methods directly related to its product and the patent at issue. Dr. SenGupta also procures patents related to water treatment. He is a named inventor of five patents and has several pending patent applications. His curriculum vitae indicates he has worked as a consultant for two competitors and will create a risk of disclosing confidential and proprietary information to these companies. Defendant also

---

[18]Ex. B to Def.'s Mem. of Law in Supp. of its Mot. for Protective Order (doc. 38-2), ¶ 4.

argues that Dr. SenGupta is not an attorney and officer of the Court and thus not bound by the Code of Professional Responsibility. It finally contends that Dr. SenGupta will suffer no prejudice by being denied access to materials designated as "Attorneys' Eyes Only," because the same attorneys represent both him and Plaintiff Layne. These attorneys will have access to materials designated for "Attorneys' Eyes Only" and will be able to effectively advise Dr. SenGupta throughout the litigation.

Plaintiffs oppose any prohibition against access by Dr. SenGupta of materials that may be designated "Attorneys' Eyes Only." They argue that Defendant has not shown good cause for denying him such access. They assert that, as a plaintiff and inventor of the patent at issue, he should be allowed access to all discoverable information. They contend that prohibiting such access would be unfair, unnecessary, and would preclude his meaningful participation in prosecuting this case. They further argue that, without consultation with Dr. SenGupta, their counsel will not be able to effectively analyze and decipher Defendant's technical information. Plaintiffs cite to *MGP Ingredients, Inc. v Mars, Inc.,*[19] a patent infringement case from this District. In that case the court, rejecting arguments similar to those advanced by Defendant here, found the party seeking the two-tier protective order had not shown good cause for it.

Under Fed. R. Civ. P. 26(c)(1)(G), the court may, for good cause, issue a protective order to require that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."[20] A party seeking that its

---

[19]No. 06-2318-JWL-DJW, 2007 WL 756645, at *3 ( D. Kan. Mar. 8, 2007), *affirmed by MGP Ingredients, Inc. v. Mars Inc*., 245 F.R.D. 497 (D. Kan. 2007).

[20]Fed. R. Civ. P. 26(c)(1)(G). It is well established that "[t]here is no absolute privilege for trade secrets or similar confidential information." *Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340,

13

information only be revealed in a certain way, such as limiting who can view or access the materials, under this Rule must first establish that the information sought is a trade secret or other confidential research, development, or commercial information.[21] It must also show that the disclosure of this information might be harmful,[22] such as showing the competitive harm that would befall it by virtue of the disclosure of the trade secrets or other highly-confidential proprietary information.[23]

Once the party requesting that its trade secrets only be revealed in a specified way has met its initial burden, the burden then shifts to the party seeking unrestricted disclosure to establish that such disclosure is relevant and necessary to the action.[24] To establish necessity, some courts have considered whether the proposed limitation on disclosure to certain individuals would impair the ability of the party seeking full disclosure to proceed effectively with the litigation.[25] Finally, the

---

362 (1979). A court, however, may issue a protective order when necessary to limit the disclosure of trade secrets and other confidential research, development and commercial information under Rule 26(c)(1)(G). *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 500 (D. Kan. 2007) (deciding case under Rule 26(c)(7), which was the earlier but nearly identical version of Rule 26(c)(1)(G)).

[21]*In re Cooper Tire & Rubber Co.,* 568 F.3d 1180, 1190 (10th Cir. 2009) (citing *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981)).

[22]*Id.*

[23]*See MGP Ingredients*, 245 F.R.D. at 501 (party seeking to resist disclosure has the burden of proving the competitive harm that would befall it by virtue of its disclosure to the other party's in-house personnel and outside consultants).

[24]*In re Cooper Tire,* 568 F.3d at 1190; *Univ. of Kan. Ctr. for Research, Inc. v. United States*, Civ. A. No. 08-2565-JAR-DJW, 2010 WL 571824, at * 7 (D. Kan. Feb. 12, 2010).

[25]*See Brown Bag Software, Inc. v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (balancing the risk of inadvertent disclosure of trade secrets to competitors against the risk that protection of the defendant's trade secrets impaired prosecution of the plaintiff's claims); *MGP Ingredients*, 245 F.R.D. at 502 (permitting disclosure to in-house personnel who had substantial experience in a narrow field that cannot be replaced in the open market and that prohibiting access could impair the party's ability to prosecute its claims); *Safe Flight Instrument Corp. v. Sundstrand*

court must balance the need of the party seeking discovery of the trade secrets and confidential information against the opposing party's claim of injury resulting from the disclosure.[26] Where the protection sought is only to prevent certain identified individuals from viewing the materials, such as in-house counsel or the patent inventor, the court must balance the risk of inadvertent disclosure of trade secrets to competitors against the risk to the other party that protection of these trade secrets will prejudice its ability to prosecute or defend the present action.[27]

In weighing these competing interests, the court should consider whether the individual to be prohibited from accessing the information would be virtually unable to compartmentalize the information and not use the information to seek to gain an unfair competitive advantage.[28] The court

_Data Control, Inc._, 682 F. Supp. 20, 22 (D. Del. 1988) (prohibiting plaintiff's president, an aeronautic engineer with more than 60 patents, from reviewing defendant's confidential scientific information and rejecting as speculative the plaintiff's claim that president was uniquely qualified); _Medtronic Sofamor Danek, Inc. v. Michelson_, No. 01-2373-GV, 2002 WL 33003691, at *3 (W.D. Tenn. Jan. 30, 2002) (permitting disclosure to defendant and inventor of the technology at issue and finding that prohibiting his access to spinal fusion technology would "greatly impair" his ability to defend himself in the lawsuit and to pursue his claims for breach of contract and infringement); _THK America, Inc. v. Nippon Seiko K.K._, 141 F.R.D. 461, 462 (N.D. Ill. 1991) (finding that the defendants' proposal to preclude the president of the company and inventor of the patents would unduly "hamstring" the plaintiff's litigious efforts because it would preclude the plaintiff from conferring with the most knowledgeable person about the issues in the case so that he can assist in the evaluation and prosecution of his company's suit on his patented inventions).

[26]_Cooper Tire,_ 568 F.3d at 1190.

[27]_Medtronic Sofamor_, 2002 WL 33003691, at *3. _See also In re Indep. Svc. Org. Antitrust Litig._, No. Civ. A. MDL-1021, 1995 WL 151739, at *1 (D. Kan. Mar. 9, 1995) ("In determining the scope of a protective order, the court must balance the need for the confidential information against the risk of harm associated with disclosure.").

[28]_See MGP Ingredients_, 245 F.R.D. at 501 (citing case that looked to whether disclosure of information to a competitor would allow disclosure to a competitive decision maker who would be virtually unable to compartmentalize the information and not use the information to seek to gain an unfair competitive advantage) (citing _Intervet, Inc. v. Merial Ltd._, 241 F.R.D. 55, 55-59 (D.D.C. 2007); _Blanchard & Co. v. Barrick Gold Corp._, Case No. 02-3721, 2004 WL 737485, at *7-*10 (E.D. La. Apr. 5, 2004); _United States v. Dentsply Int'l, Inc._, 187 F.R.D. 152, 159-60 (D. Del.

should also consider whether prohibiting the individual's access to the information would hamper the party's ability to assess the merits of the litigation. This involves considering the individual's specific role in the litigation, whether his or her expertise is specialized and not widely available through the retention of other experts, and whether this specialized expertise is essential to the proper handling of the litigation.[29]

The Court must thus consider the rights of Plaintiffs to effectively prepare for trial against the risk that Dr. SenGupta may improperly use information from protected materials to aid his own future research or commercial pursuits or that he may disclose it in consulting with competitors of Defendant. Dr. SenGupta is himself a plaintiff in this action. As a party to the protective order, he is fully bound by its provisions, including the requirement that materials designated "Confidential" or "Attorneys' Eyes Only" shall only be used for purposes of the prosecution, defense, or settlement of this action and for no other purpose.

Dr. SenGupta is an inventor of the patent at issue. But unlike plaintiff Layne, he is not a direct competitor of Defendant. There is no evidence that he is involved in competitive decision-making of plaintiff Layne or that he is has any management role in that company. Any financial

---

1999)). *See also Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988); *Medtronic Sofamor*, 2002 WL 33003691, at *3.

[29]*See MGP Ingredients*, 245 F.R.D. at 502 (finding that prohibiting plaintiff's employees from having access to discovery materials could impair its ability to prosecute its claims); *Medtronic Sofamor*, 2002 WL 33003691, at *3-4 (finding that prohibiting defendant and inventor of the technology at issue from accessing spinal fusion technology, but not financial and marketing data, would "greatly impair" his ability to defend himself in the lawsuit and to pursue his claims for breach of contract and infringement); *THK America,* 141 F.R.D. at 462 (finding that the defendants' proposal to preclude the president of the company and inventor of the patents would unduly "hamstring" the plaintiff's litigious efforts because it would preclude the plaintiff from conferring with the most knowledgeable person about the issues in the case so that he can assist in the evaluation and prosecution of his company's suit on his patented inventions.).

interest he may have in its business through receipt of royalties from the sale of product is not a sufficiently significant interest to enter a general prohibition against his access to material designated as "Attorneys' Eyes Only." His primary occupation appears to be as a professor in the chemical, civil and environmental engineering departments of Lehigh University.

The respective protective orders proposed by Plaintiffs and by Defendant would both give Dr. SenGupta access to all documents designated as "Confidential." The order proposed by Defendant would operate to exclude Dr. SenGupta from general access to documents designated for "Attorneys' Eyes Only." The Court notes one possible exception to that proposed exclusion. Paragraph 5(a)(iv) of Defendant's proposed order would grant access to such documents for "[t]he original authors, drafters, addressees, or recipients of the Document."[30] Dr. SenGupta could qualify for access to documents within that category, notwithstanding their restriction for "Attorneys' Eyes Only."

Considering all the factors thus discussed, the Court finds that Defendant has shown good cause for protection against unqualified access by Dr. SenGupta to documents designated for "Attorneys' Eyes Only." The protective order proposed by Defendant provides that protection. The Court does not find that Plaintiffs have shown a specific need for broader access by Dr. SenGupta to "Attorneys' Eyes Only" documents, particularly as to pricing information, contracts, sales, marketing and strategic business information, or corporate finances. Should a need arise for his access to documents designated for "Attorneys' Eyes Only," the parties may address it by appropriate motion for relief from the protective order.

---

[30]Def.'s Proposed Protective Order, Ex. A to Def.'s Mem. of Law in Supp. of its Mot. for Protective Order (doc. 38-1), ¶ 5(a)(iv).

## C. Whether the protective order should require the parties to disclose the identity of the consultant or expert prior to disclosure of confidential information

Defendant further proposes that the protective order include a separate provision for the disclosure of designated materials to experts and consultants. It would require that the parties: (1) serve a notice on the producing party notifying it of its intention to disclose the designated materials to any expert or consultant, (2) identify by name the expert or consultant to whom it intends to disclose the designated material, and (3) verify that a copy of the acknowledgment to be bound by the protective order has been provided to the expert or consultant. Defendant argues that this provision is necessary to protect against disclosure of its research and development efforts, sales, marketing and strategic business information to unidentified third party experts or consultants who may be employed by or affiliated with one of its direct competitors. Disclosure of this information to experts or consultants who are employed or consult with competitors of Defendant would cause significant harm to its business. Defendant identifies the following companies as competitors: Plaintiff Layne, Seven Trent Company, Dow Chemical Company, Lanxess AG, Resintech, Inc., and Thermax.[31]

Plaintiffs object to the inclusion of a provision requiring the advance disclosure of the identity of any consultant or expert to whom they intend to disclose confidential information. They argue that Defendant has failed to meet its heavy burden to show a need for its proposed procedure with regards to experts and consultants. They contend it would provide unwarranted intrusion into their litigation strategies and subvert the principle of fairness underlying Fed. R. Civ. P. 26(b)(4)(B).

---

[31]Decl. of Jacob W. Brodie, Ex. B to Def.'s Mem. of Law in Supp. of its Mot. for Protective Order (doc. 38-2), ¶ 4.

In support, they cite to Judge Waxse's 2007 opinion in *MGP Ingredients.*[32]  In that case, the court addressed this issue and found that the defendants had not met their heavy burden to show exceptional circumstances.[33]  The court found that the forced disclosure of the identities of a party's non-testifying experts and consultants represented an unwarranted intrusion into the party's litigation strategy and would provide the opposing party with an unjust advantage.[34]  Plaintiffs stress, moreover, that this procedure is unnecessary.  They will agree to requiring third party consultants and experts to sign an acknowledgment and agreement to be bound by the terms of the protective order before allowing access to confidential information.

Defendant replies that, aside from the disclosures required by its proposed protective order, it has no interest in pursuing and does not intend to seek discovery from or on Plaintiff's non-testifying experts and consultants.  Its sole interest is instead to prevent its competitors from having access to its confidential technical and business information.

Fed. R. Civ. P. 26(b)(4)(B) prohibits discovery of facts and opinions held by experts who are not expected to be called as witnesses at trial.  Although Rule 26(b)(4)(B) does not expressly address the disclosure of a non-testifying expert's *identity*, the Tenth Circuit has held that the Rule prohibits disclosure of "the identity, and other collateral information" concerning any non-testimonial expert who is retained or specially employed in anticipation of litigation.[35]  If a party seeks disclosure of the non-testimonial expert's identity and other related information, it must make

---

[32] 2007 WL 756645, at *3-4.

[33] *Id.* at *4.

[34] *Id.*

[35] *Ager v. Jane C. Stormont Hosp. & Training School for Nurses*, 622 F.2d 496, 503 (10th Cir. 1980).

"a showing of exceptional circumstances under which it is impracticable for . . . [it] to obtain facts or opinions on the same subject by other means."[36]  The party seeking disclosure "carries a heavy burden" in demonstrating the existence of exceptional circumstances.[37]

In this case, Defendant has not met its heavy burden to show exceptional circumstances necessary for a protective order provision requiring the advance identification of a party's non-testifying experts or consultants prior to any disclosure of materials or information designated as either confidential or "Attorneys' Eyes Only" to the expert or consultant.  The Court finds that Defendant's proposed protective order, which would force the disclosure of the identities of non-testifying experts and consultants, represents an unwarranted intrusion into the party's litigation strategy and would provide the opposing party with an unjust advantage.  This provision thus has the potential to subvert the principle of fairness underlying Rule 26(b)(4)(B).  In addition, this provision is unnecessary.  Plaintiffs have agreed that they will require third party consultants and experts to sign an acknowledgment and agreement to be bound by the terms of the protective order before allowing access to the confidential information.

In light of the foregoing, the Court rejects Defendant's proposed protective order provision requiring the parties to disclose the identity of the consultant or expert prior to whom they intend to disclose of confidential information.  The Court, however, will modify paragraph 5(a)(iii) of Defendant's proposed protective order to require all experts and consultants to sign the Acknowledgment and Agreement and to prohibit disclosure of materials designated as "Attorneys' Eyes Only" to an expert or consultant who is employed with or consult with Defendant's

---

[36]*Id.*

[37]*Id.* (quoting *Hoover v. U.S. Dep't of Interior*, 611 F.2d 1132, 1142 n. 13 (5th Cir. 1980)).

competitors.

Defendant, however, makes a convincing argument for limiting disclosure of its material designated as "Attorneys Eyes Only" to unidentified third party experts or consultants who may be employed by or affiliated with one of its direct competitors. The Court finds that Defendant's concerns can be addressed by modifying paragraph 5(a)(iii) of Defendant's proposed protective order to prohibit disclosure of materials designated as "Attorneys' Eyes Only" to any expert or consultant who consults or is employed with Defendant's competitors, identified by Defendant as Seven Trent Company, Dow Chemical Company, Lanxess AG, Resintech, Inc., and Thermax.

## V.    Summary of the Court's Rulings

In summary, Defendant has shown good cause for the entry of a two-tier protective order. The Court agrees with the suggestion by Plaintiffs, however, that the protective order should have some limits on what a party can designate as "Attorneys' Eyes Only." The order will designate the categories of documents to which such designation applies. The protective order will not list Dr. SenGupta as having access any materials designated as "Attorneys' Eyes Only." He may, however, be able to access "Attorneys' Eyes Only" materials under the provision allowing access to original authors, drafters, addressees, or recipients of the document. Finally, the Court finds that advance disclosure of the identity of a consultant or expert represents an unwarranted intrusion into the other party's litigation strategy and would provide the opposing party with an unjust advantage. The Court rejects, therefore, the proposed provision that would require the parties to disclose the identity of the consultant or expert prior to whom they intend to disclose of confidential information. The protective order will prohibit disclosure of materials designated for "Attorney's Eyes Only," however, to any expert or consultant who consults or is employed with Seven Trent Company, Dow

Chemical Company, Lanxess AG, Resintech, Inc., or Thermax. The order will also require all experts and consultants to sign an Acknowledgment and Agreement and to prohibit disclosure of materials designated as "Attorneys' Eyes Only" to an expert or consultant who is employed with or consults with Defendant's competitors.

**IT IS THEREFORE ORDERED THAT** Defendant's Motion for Protective Order (doc. 37) is granted in part and denied in part, as herein set forth. With the filing of this Memorandum and Order, the Court will enter a protective order as herein set forth.

Dated in Kansas City, Kansas on this 28th day of July, 2010.


s/ Gerald L. Rushfelt
Gerald L. Rushfelt
United States Magistrate Judge