**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

LAYNE CHRISTENSEN COMPANY,
and DR. ARUP SENGUPTA,

             Plaintiffs,                          CIVIL ACTION

v.                                      No. 09-2381-JWL-GLR

THE PUROLITE COMPANY,

             Defendant.

<u>**MEMORANDUM AND ORDER**</u>

In this patent infringement and breach of contract action, Plaintiffs allege that Defendant, a former licensee, infringed upon a patent for removal of arsenic from drinking water and breached the post termination provisions of their license agreement. Currently pending before the Court are Plaintiffs' Motion for Protective Order (ECF No. 66) and Second Motion for Protective Order (ECF No. 89). Pursuant to Fed. R. Civ. P. 26(c), Plaintiffs request that the Court enter a protective order relieving them of the burden of responding to a collective 626[1] requests for admission served upon them by Defendant. As set forth below, both motions are denied.

I.      **Relevant Factual Background**

Plaintiffs Layne Christensen Company ("Layne") and Dr. Arup SenGupta ("SenGupta") assert claims for patent infringement and breach of contract against Defendant. They allege that Defendant, a former licensee, infringed upon United States Patent No. 7,291,578 issued to SenGupta for removal of arsenic from drinking water by its refusal to stop making and selling the arsenic removal product after termination of the license agreement. They also allege that Defendant

---

[1]This number is comprised of 277 First Requests for Admission to Layne, 329 First Requests for Admission to SenGupta, and 20 Second Requests for Admission to Layne.

breached the post-termination provisions of the license agreement.

In its Second Amended Answer filed September 15, 2010, Defendant asserts nine counterclaims. It asserts a counterclaim for breach of contract, and for a declaration of non-infringement and patent misuse, as well as rescission of the contract. It also asserts counterclaims for restraint of trade under K.S.A. 50-112, unfair competition under common law, patent invalidity, and recoupment.[2]

On June 9, 2010, Defendant served its First Set of Requests for Admission to Layne, comprised of 277 requests for admission.[3] That same day, it also served its First Set of Requests for Admission to SenGupta, comprised of 329 requests for admission.[4]

On July 13, 2010, Defendant served another 20 requests for admission in its Second Set of Requests for Admission to Layne.

## II.     Whether Plaintiffs have Satisfied Their Duty to Confer

Defendant argues that Plaintiffs' motions should be denied because they failed to meet and confer as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2. With respect to the first motion for protective order, it agrees that the parties met and conferred with respect to some, but not all, issues. In particular, it faults Plaintiffs for failing to identify any particular requests for admission during the meet and confer process. As to the second motion for protective order, Defendant claims that the parties never discussed the second set of requests for admission prior to the filing of the motion. It argues that Plaintiffs cannot meet their duty to confer on the second set

---

[2]*See* Def.'s Second Am. Answer to Am. Compl. (ECF No. 111).

[3]*See* Def. Purolite's First Set of Req. for Admis. to Layne (ECF No. 67-1).

[4]*See* Def. Purolite's First Set of Req. for Admis. to SenGupta (ECF No. 67-2).

of requests for admission by merely referencing the meet and confer discussions regarding the first set.

Fed. R. Civ. P. 37(a)(1) requires any motion to compel discovery to include a "certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."

In conjunction with Fed. R. Civ. P. 37, District of Kansas Rule 37.2 provides:

> The court will not entertain any motion to resolve a discovery dispute pursuant to Fed. R. Civ. P. 26 through 37 . . . unless counsel for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion.
>
>       \*      \*      \*
>
> A "reasonable effort to confer"means more than mailing or faxing a letter to the opposing party. It requires that the parties in good faith converse, confer, compare views, consult and deliberate, or in good faith attempt to do so.

The purpose of the local rule is to encourage the parties to satisfactorily resolve their discovery disputes prior to resorting to judicial intervention.[5] Meet and confer requirements are not satisfied "by requesting or demanding compliance with the requests for discovery."[6] The parties must determine precisely what the requesting party is actually seeking, what responsive documents or information the discovering party is reasonably capable of producing, and what specific, genuine objections or other issues, if any, cannot be resolved without judicial intervention.[7]

In their first Motion for Protective Order (ECF No. 66), Plaintiffs certify that they in good faith conferred with defense counsel prior to filing the motion. They further identified their efforts

---

[5]*VNA Plus, Inc. v. Apria Healthcare Grp., Inc.*, No. Civ. A. 98-2138-KHV, 1999 WL 386949, at \*1 (D. Kan. June 8, 1999).

[6]*Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999).

[7]*Id.*

to confer, including exchanging several e-mails defense counsel, and a lengthy telephone conference on June 30, 2010 in an attempt to resolve the discovery dispute. Additionally, they reported that they provided case citations supporting their argument that Defendant's requests for admission are unduly burdensome and oppressive. In their reply, Plaintiffs indicate that at the June 30 meet and confer conference, they in fact identified a number of requests that were improper and contributed to the excessive number of requests.

In their certification in their second Motion for Protective Order (ECF No. 89), Plaintiffs certify that they made "a good faith attempt to resolve [the] dispute over the quantity of requests for admission *when this issue first arose*," after Defendant served the original 606 requests for admission on Plaintiff.[8] They then list the efforts made during the original meet and confer process related to Defendant's first 606 requests for admission. They then state:

> Based on Defendant's previous position, which Plaintiff assumes has not changed in light of the fact that Defendant served additional requests on Plaintiff despite Plaintiffs' previous objections related to the excessiveness of the original 606 requests, Plaintiff's counsel did not engage in another meet and confer process related to the exact same issue on which the parties had conferred approximately one month earlier.[9]

The Court finds that Plaintiffs have made sufficient efforts to confer before filing their first motion for protective order. They exchanged emails with defense counsel, provided case citations in support of their position, as well as participating in a lengthy telephone conference to discuss their objections to what they believe to be an excessive number of requests for admission. Defendant agrees that Plaintiffs met and conferred with respect to some of the issues raised in their first motion

---

[8]*See* Pls.' Second Mot. for Protective Order (ECF No. 89) at p. 2 (emphasis added).

[9]*Id.*

to compel.  It contends, however, that the motion for protective order should be denied because Plaintiffs failed to identify any particular requests for admission during the meet and confer process. The Court finds that Plaintiffs made adequate efforts to confer with respect to their first motion for protective order.  Although they may not have identified the specific requests for admission that they now reference as examples in their motion, Defendant was sufficiently on notice as to the general substance of Plaintiffs' objections to its requests for admission.

While Plaintiffs have met their duty to confer with respect to the first motion for protective order, they have shown no effort to meet and confer about Defendant's second set of requests for admission, the subject of their second motion for protective order.  The Court does not accept their reliance upon prior conferring efforts for the first set of requests to satisfy the duty to confer about the second set.   D. Kan. Rule 37.2 requires counsel for the moving party to confer or make reasonable effort to confer with opposing counsel, "concerning the matter in dispute."  The matter in dispute in the second motion is the second set of requests for admission.  Plaintiffs had the duty to exert some reasonable effort to confer with opposing counsel about the second set.  The rule does not contemplate indulgence for a belief that could be mistaken.  Plaintiffs have failed to attempt to confer as to the matter in dispute for their second Motion for Protective Order (ECF No. 89), i.e., Defendant's Second Set of Requests for Admission, this motion is denied.

### III.    Whether Plaintiffs Have Shown Good Cause for a Protective Order Relieving Them from Responding to the First Set of Requests for Admission

Plaintiffs seek a protective order against Defendant's first set of requests for admission.  In support of their motion, they contend the requests are unduly burdensome and oppressive because they are too numerous.  Additionally they argue that Defendant will receive little benefit from responses to 606 requests, because many of them are duplicative, aimed at the wrong party,

converses of other requests, and otherwise improper and objectionable. They assert that the burden and expense of responding to the numerous requests is unreasonable, because this is an "uncomplicated and straightforward" case with only two plaintiffs with aligned interests and only one defendant. Although the case involves alleged patent infringement and breach of a licensing agreement, they point out only one patent is at issue with only 15 claims and that the issues relevant to contract overlap those relevant to the patent. Plaintiffs also contend the factual issues are fairly limited and do not justify the excessive number of requests for admission served by Defendant. Consequently, Plaintiffs ask the Court to issue a protective order to relieve them from responding to Defendant's first set of requests for admission in their entirety.

### A. Objection That Responding to Excessive Number of Requests for Admission Is Unduly Burdensome and Oppressive

Federal Rule of Civil Procedure 26(c)(1) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[10] As the parties seeking the protective order, Plaintiffs have the burden to show good cause for its entry.[11] To establish good cause under Rule 26(c), a party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[12]

The court has broad discretion to decide when a protective order is appropriate and what degree of protection is required.[13] The Supreme Court has recognized that "[t]he trial court is in the

---

[10]Fed. R. Civ. P. 26(c).

[11]*Reed v. Bennett*, 193 F.R.D. 689, 691 (D. Kan. 2000).

[12]*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

[13]*MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 500 (D. Kan. 2007) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

best position to weigh fairly the competing needs and interests of the parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."[14]  Furthermore, the court is required by Fed. R. Civ. P. 26(b)(2)(C) to limit the frequency or extent of discovery if it determines that the discovery sought is unreasonably cumulative or duplicative.[15]  The court is also required to limit discovery if it finds that "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."[16]

Federal Rule of Civil Procedure 36 governs requests for admission.  It permits a party to serve "a written request to admit . . .  the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents."[17]  The advisory committee notes to Rule 36 explain that requests for admission serve "two vital purposes, both of which are designed to reduce trial time.  Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be."[18]  "The purpose of a request for admissions generally is not to discover additional information concerning the subject of the request, but to force the opposing party to formally admit the truth of certain facts, thus allowing the

_____

[14]*Seattle Times*, 467 U.S. at 36.

[15]Fed. R. Civ. P. 26(b)(2)(C)(i).

[16]Fed. R. Civ. P. 26(b)(2)(C)(iii).

[17]Fed. R. Civ. P. 36(a)(1).

[18]Fed. R. Civ. P. 36  advisory committee's note (1970 Amendment).

requesting party to avoid potential problems of proof."[19]

Neither the Federal Rules of Civil Procedure, nor the local rules for the District of Kansas, sets a presumptive limit on the number of requests for admission that may be propounded by a party.[20]  While Rule 33(a)(1) sets a limit on the number of interrogatories a party may serve, Rule 36 places no limit on the number of requests for admission a party may serve.  Fed. R. Civ. P. 26(b)(2)(A), however, specifically grants the court the authority to "limit the number of requests [for admission] under Rule 36."[21]

A few cases from the District of Kansas have addressed motions to limit or objections to the number of requests for admission.  In *United States ex rel. Regan v. Medtronic, Inc.*,[22] Magistrate Judge Humphreys granted a motion for protective order relieving the defendants from responding to 506 requests for admission.  The case involved a *qui tam* case against a manufacturer of cardiac pacemakers for withholding warranty credits due hospitals.[23]  The court found that the requests for admission were "more than an attempt to nail down the disputed core facts of the case" and, instead, were an attempt "to pick every nit that a squad of lawyers could possibly see in it."[24] As a result, the

---

[19]*Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, Civ. A. No. 94-2395-GTV, 1995 WL 625744, at *1 (D. Kan. Oct. 5, 1995) (quoting *Hurt v. Coyne Cylinder Co.*, 124 F.R.D. 614, 615 (W.D. Tenn. 1989)).

[20]*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 3171768, at *2 (D. Kan. Oct. 29, 2007).

[21]*See* Fed. R. Civ. P. 26(b)(2)(A) ("By order or local rule, the court may also limit the number of requests [for admission] under Rule 36.").

[22]Nos. 95-1236-MLB, 96-1309-MLB, 2000 WL 1478476, at *4 (D. Kan. July 13, 2000).

[23]*Id.*

[24]*Id.*

court entered a protective order against the annoyance, expense, and burden of responding to the requests for admission.[25]

In another case, *Heartland Surgical Specialty Hospital, LLC v. Midwest Division, Inc.*,[26] Magistrate Judge Bostwick overruled an objection that the number of requests for admission were excessive. In *Heartland*, multiple defendants served a total of 1,351 requests for admission on the plaintiff, 734 of which were propounded by a single defendant.[27] Noting the case was a "multi-defendant, complicated antitrust conspiracy case," the court denied the plaintiffs' motion for a protective order against the number of requests served, because it found the number of requests was not surprising given there were 18 defendants, multiple allegations of conspiracy, and the plaintiff sought over $121 million jointly and severally against the defendants.[28]

In *Utley v. Wray*,[29] Magistrate Judge Bostwick found that the defendants had not convinced the court that the plaintiff was abusing the use of requests for admission simply because of the number of requests that were served. The plaintiff in the medical malpractice action had served 105 requests for admission on defendant Kennett and 148 on defendant Wray.[30] The court was cognizant of the fact that large numbers of requests for admission may be unduly burdensome, depending upon

---

[25]*Id.*

[26]2007 WL 3171768, at *2-3.

[27]*Id.*

[28]*Id.*

[29]Civ. A. No. 05-1356-MLB, 2007 WL 2703094, at *2 n.1 (D. Kan. Sept. 14, 2007).

[30]*Id.* at *2.

the facts and circumstances of the particular case.[31]  While noting that requests for admission can be a valuable litigation tool, it also commented that "large numbers of requests for admission may be part of a 'scorched earth' discovery strategy, designed to overwhelm an opponent, particularly where the requests are of marginal relevance."[32]

In another medical malpractice case, *McCloud v. Board of Geary County Commissioners*,[33] Judge Bostwick rejected a similar argument that requests for admission were objectionable in their entirety due to the large number propounded.  The plaintiffs had served a collective 438 requests for admission on three defendants.[34] The defendants argued that the requests were excessive and oppressive and so voluminous and so framed that to answer them would be unduly burdensome.[35] The court however, found that the defendants made little or no effort to provide substantive discussion as to how or why the number of requests submitted to each defendant, upon its face, was objectionable, given that the case was a multi-defendant, medical malpractice action involving the death of a newborn.[36]

Plaintiffs argue that, unlike the *Heartland* case, this is an uncomplicated and straightforward case with only two plaintiffs with aligned interests and one defendant. They believe the factual issues are limited to: (1) whether or not Defendant breached the license agreement and infringed

---

[31]*Id.* at *2 n.1.

[32]*Id.*

[33]Civ. A. No. 06-1002-MLB, 2008 WL 3502436, at *3 (D. Kan. Aug. 11, 2008).

[34]*Id.* at *1.

[35]*Id.* at *3.

[36]*Id.*

upon Layne's patent by continuing to sell its arsenic removal product without a license, and, if so, the amount of Layne's damages; (2) whether or not their contract is enforceable; and (3) whether or not Layne has misused its patent. They attempt to distinguish the facts in this case from those in *Heartland* by pointing out that this case has no allegations of conspiracy among multiple defendants, no antitrust allegations, and that the amount in dispute is not hundreds of millions of dollars. They argue that, while the complicated nature of *Heartland* may have justified 734 requests for admission from one defendant, it does not support the argument that 606 requests for admission are appropriate in this case. They cite the *Medtronic*[37] case from this District and four from other districts,[38] in which the courts have issued protective orders against excessive requests for admission in order to protect litigants from annoyance, expense, and the burden of responding to such requests.

In response to the motion, Defendant first points out that the 606 requests for admission are in fact two separate sets, served upon two different parties. It suggests that the Court consider the protest of excessiveness with respect to 277 requests served on Layne and 329 requests on SenGupta, and not simply as to the aggregate number. It maintains that neither set of requests is

---

[37]2000 WL 1478476 (finding 506 requests for admission improper and excessive because they were more than an attempt to nail down the disputed core facts of the case).

[38]*See Taylor v. Great Lakes Waste Servs.*, No. 06-CV-12312-DT, 2007 WL 422036 (E.D. Mich. Feb. 2, 2007) (finding 297 requests for admission from one defendant in an "uncomplicated" employment discrimination action unduly burdensome); *Leonard v. Univ. of Del.*, No. 96-360, 1997 WL 158280, at *7 (D. Del. Feb. 20, 1997) (finding 800 plus requests for admission oppressive and that an "objective attorney would be hard-pressed to quibble with the conclusion" that such requests are unreasonable and unduly burdensome"); *Gannon v. United States*, No. 03-6626, 2006 WL 2927639, at *1 (E.D. Pa. Oct. 6, 2006) (finding 1407 requests for admission "grossly excessive" and therefore abusive, burdensome and oppressive); *Wigler v. Elec. Data Sys. Corp.*, 108 F.R.D. 204, 205-06 (D. Md. 1985) (finding 1664 requests for admission unjustifiable, lending itself at least to the appearance of harassment, and that answering such requests "would have taxed the powers of Hercules, even before he cleaned the Augean Stables").

excessive, given the nature of the claims and counterclaims in this case. Defendant also argues that Plaintiffs have failed to provide any evidence to support their objection that responding to 277 or 329 requests would be unduly burdensome. It contends the requests address core issues and that the number is justified, given the multiple, complex issues of patent infringement, breach of contract, and related counterclaims.

The Court finds that Plaintiffs have not shown good cause for a protective order to relieve them from responding to the 277 requests for admission served upon Layne and the 329 requests served upon SenGupta. The Court is not persuaded that this is an "uncomplicated and straightforward" case limited to only three factual issues, as Plaintiffs suggest. By their complaint, Plaintiffs have brought a claim for infringement of one patent with 15 claims, as well as a claim for breach of a licensing agreement. Defendant, moreover, has asserted nine counterclaims for breach of contract, declaration of non-infringement and patent misuse, rescission, restraint of trade under K.S.A. 50-112, unfair competition under common law, patent invalidity, and recoupment. If there is only one patent at issue with only 15 claims, Plaintiffs have accused Defendant of infringing 11 of them, relating to apparently complex chemical reactions. Given the nature of the claims and counterclaims, the Court finds the case more complex than Plaintiffs suggest and justifying a substantial number of requests, as Defendant has asserted.

The Court also notes that Plaintiffs have posed general arguments as to why responding to 277 or 329 requests would be unduly burdensome. But they fall short of specifics. First, they have cited several cases in which protection has been granted against excessive numbers of requests for admissions. In most of them the number of requests to a party was greater than those directed here to either Plaintiff. Aside unpersuasive assertions that this case has only three basic issues, Plaintiffs

simply fail to demonstrate why the Court should place a limit on the number of requests for admissions or, if it did, what that number should be. They criticize 277 and 329 as excessive. But that argument provides little help as to what should be a reasonable limit, whether it be 100, 200, 300, or some other lesser or greater number. The rules themselves do not set a specific limit. The party claiming undue burden carries a preliminary burden to show it.

Second, Plaintiffs have offered no evidence, by affidavit or otherwise, to support their suggestion that the requests do create an undue burden. Simply to label a task as unduly burdensome or oppressive does not make it so.[39] Responses to the requests may for the most part elicit either denials or responses by which a party for lack of information neither admits nor denies them. The briefing hardly provides help to the Court in this regard.

Third, a cursory review of the proposed requests for admission leads the Court to view them, at least at this point, as reasonably clear, straightforward, and facially uncomplicated. With only limited knowledge and understanding of this case, the Court makes no ruling in this regard. But it simply notes, as to the instant motion, that on their surface the wording of the requests does not appear to support the argument that they are unduly burdensome.

### B. Objection to Converse Requests for Admission

In addition to their general objection that responding to the requests is unduly burdensome and oppressive, Plaintiffs also object more specifically to some of them. They object to several of them as "converse" of each other, i.e., one request asks Plaintiffs to admit a set of facts and then another request asks to admit the negative. For example, First Request for Admission No. 12 to

---

[39]*McCloud*, 2008 WL 3502436, at *3.

SenGupta asks him to admit "The Patent-In-Suit is the first disclosure of a method for synthesizing a selective adsorbent that contains dispersed particle of iron in a resin." First Request No. 14 then asks SenGupta to admit the converse: "The Patent-In-Suit is _not_ the first disclosure of a method for synthesizing a selective adsorbent that contains dispersed particle of iron in a resin." Plaintiffs complain there are many "converse" requests like this, such as First Requests for Admission to Layne Nos. 8 and 9, 10 and 11, and First Requests for Admission to SenGupta Nos. 8 and 10, 9 and 11, 13 and 15.

Defendant argues that converse requests for admission are allowable and proper under Fed. R. Civ. P. 36. It also argues there is a benefit for Plaintiffs to admit or deny one set of facts and then admit or deny the opposite. Defendant contends that, under Rule 36(b), only the matter admitted is conclusively established. Therefore, its converse requests for admission are beneficial because they may elicit conclusive admissions in both directions and thereby nail down core facts of a case.

The Court finds nothing *per se* objectionable about "converse" requests for admission that ask a party to admit one set of facts and then to admit the negative. Plaintiffs have not negated that they ask for different admissions and, therefore, are not simply duplicative or cumulative. For example, asking SenGupta to admit "The Patent-In-Suit is the first disclosure of a method for synthesizing a selective adsorbent that contains dispersed particle of iron in a resin," is different from asking him to admit "The Patent-In-Suit is *not* the first disclosure of a method for synthesizing a selective adsorbent that contains dispersed particle of iron in a resin." Admitting one does not necessarily mean that the converse must always be denied. A party may admit one request and deny the other, moreover, or respond that it has insufficient information to admit or deny either request. The Court denies the motion to the extent it seeks an order to relieve Plaintiffs from responding to

"converse" requests for admission.

### C. Objection to Requests for Admission That Ask One Party to Admit Facts as to Another's Party's Knowledge

Plaintiffs also object to at least 75 requests for admission upon grounds they ask one party to admit or deny facts that address the knowledge of the co-party. These requests ask SenGupta to admit facts of which only Layne could know. As way of an example, First Request for Admission No. 169 asks SenGupta to admit that "Layne suspected that ResinTech infringed the Patent-In-Suit." Similarly, Request No. 173 asks SenGupta to admit that "Layne determined that ResinTech did not infringe the Patent-In-Suit." Request No. 171 asks SenGupta to admit that "Layne suspected that Lanxess infringed the Patent-In-Suit." Request No. 175 asks SenGupta to admit "Layne determined that Lanxess did not infringe the Patent-In-Suit." Plaintiffs argue that these requests are improper. They contend Defendant can receive no legitimate benefit from asking SenGupta to admit or deny facts to which he can have no special knowledge about the co-plaintiff, especially when Layne is a party to the action and has been asked to admit the same requests.

Defendant maintains that these requests are proper and appropriate. It disputes that Plaintiffs have aligned interests in this case. It suggests their interests are adverse. Due to this alleged adversity, it claims it is entitled to independent responses from each Plaintiff, particularly on issues concerning the patent-in-suit. Defendant also disputes Layne's assertion that SenGupta "has no special knowledge of the facts he is asked to admit." It points out that SenGupta has a business relationship with Layne that relates to the subject matter of the patent-in-suit. Through that relationship, SenGupta may have some knowledge of what Layne knew and did..

Plaintiffs have not shown that the requests for admission, which ask one party to admit facts

as to a another party's knowledge, are objectionable. Although they ask one party to admit if a co-party "suspected," or "determined" some matter, this does not make the request improper. Even had Plaintiffs convinced the Court that the requests were cumulative and duplicative because they are served on both Plaintiffs, Defendant has provided a reasonable explanation for its requests that ask SenGupta to admit Layne's knowledge. The Court denies the motion to the extent that it seeks relief from responding to requests that ask a party to admit or deny facts as to another party or person's knowledge.

### D.    Objection to Requests for Admission That Cover Issues Obviously in Dispute

Plaintiffs also object to some of the requests, because they seek admissions about issues obviously in dispute. Requests for Admission No. 1 served on Layne and SenGupta asks them to admit that Defendant "does not make an anion exchange resin that includes particles of iron dispersed throughout a resin." Plaintiffs have alleged that Defendant's manufacture, use, and sale of an anion exchange resin that includes particles of iron dispersed throughout a resin are some of Defendant's infringing activities they have asked the Court to enjoin.

Fed. R. Civ. P. 36(a)(5) appears to address this objection. It states that "party must not object solely on the ground that the request presents a genuine issue for trial." In *Audiotext Communications Network, Inc. v. US Telecom, Inc.*,[40] this Court addressed, and found without merit, an objection that the requests seek admissions of contested issues which are appropriately directed to the trier of fact: "It is not a proper ground for objection that the matter presents a genuine issue

---

[40]1995 WL 625744, at *7.

for trial; the party must admit or deny it or state the reason why it cannot be admitted or denied."[41] The Court denies the motion to the extent that it seeks an order relieving it from responding to requests for admission that cover issues obviously in dispute.

### E.  Objection to Requests Incorporating or Referencing Other Documents

Plaintiffs also object to Requests for Admission Nos. 49, 50, 51, 52, 53, and 54 directed to SenGupta.  They argue that these requests are improper because they reference and require consultation of other documents.  For example, Request No. 52  asks SenGupta to admit "U.S. Patent No. 5,397,477 discloses an anion exchange resin containing particles of iron dispersed throughout the resin."  Plaintiffs argue that U.S. Patent No. 5,397,477 ("the '477 patent") is not the patent at issue in this case.  Citing *Sparton Corp. v. United States,*[42] Plaintiffs argue that even if it were an issue, incorporation by reference of another document in a request for admission has generally been held improper.

Plaintiffs also object to Request No. 49, which asks SenGupta to admit "DeMarco et al., Arsenic removal using a polymeric/inorganic hybrid sorbent, Water Research, 37 (2003), 164-176 discloses particles of iron dispersed throughout the resin."  Plaintiffs argue that what the DeMarco article discloses is not a core fact at issue in this case.  Further, requiring SenGupta to track down this article, read it, and then give his opinion as to what the DeMarco article discloses is unreasonable, unduly burdensome, and improper.

In defense of its propounded requests, Defendant argues that the admissions sought as to the

---

[41] *Id.*

[42] 77 Fed. Cl. 10, 19 (Fed. Cl. 2007).

'477 patent and the DeMarco article will assist the parties and the Court in the Markman process. They will also support its defense of patent invalidity, which is in issue. According to Defendant, the '477 patent and the DeMarco article are relevant prior art references for claim construction and its patent invalidity defense. They are important, because they were used by the patent examiner to reject the claims of the patent-in-suit. As such, they may be used to arrive at the appropriate claim construction. Plaintiffs' admissions concerning what the differences are between these references and the alleged invention may clarify issues for the Markman process and are thus are relevant. Defendant suggests that SenGupta need not track down the DeMarco article because he is an author of the article, included in a list of publications on his web page. Unlike the *Sparton* case cited by Plaintiffs, Defendant asserts that its requests set forth each matter for which an admission is requested. Second, the requests do not ask Plaintiffs to admit multiple sentences within a document.

Some courts have held that incorporation by reference of other documents in a request for admissions is improper, but may be allowed under exceptional circumstances.[43] The underlying rationale is that "[o]rdinarily the facts admitted in an answer to a request for admissions should be ascertainable merely by examination of the request and of the answer."[44] Furthermore, the practice of incorporating other documents by reference in a request for admission has been criticized as improper since it generates needless confusion and "unjustly casts upon the [responding party] the

---

[43]*United States v. Gwinn*, Civ. A. No. 5:06-00267, 2008 WL 906486, at *11 (S.D.W.Va. Mar. 31, 2008); *Sparton* , 77 Fed. Cl. at 18-19; *United States v. Watchmakers of Switzerland Info. Ctr., Inc.*, 25 F.R.D. 197, 200 (S.D.N.Y. 1959); *Securities & Exch. Comm'n v. Micro-Moisture Controls, Inc.*, 21 F.R.D. 164, 166 (S.D.N.Y. 1957)). *See also Moore v. Rees*, Civ. A. No. 06-CV-22-KKC, 2007 WL 1035013, *14 (E.D.Ky. Mar. 30, 2007).

[44]*U.S. v. Watchmakers of Switzerland Info. Ctr.*, No. Civ. 96-170, 1959 WL 67319, at *1 (S.D.N.Y. Nov. 19, 1959); *Gwinn*, 2008 WL 906486, at *11.

burden of determining at their peril what portions of the incorporated material contain relevant matters of fact which must either be admitted or denied."[45] Even given this general disfavor of the use of incorporation by reference in requests for admission, courts have allowed a certain amount of incorporation by reference in exceptional circumstances.[46]

In *Sparton*, the defendant objected to the requests for admission because each request did not separately set forth each matter for which an admission was requested.[47] One request asked the defendant "to admit each sentence contained on fifteen pages, which constitutes a minimum of seventy-five different matters."[48] The *Sparton* court agreed with the defendant that the requests were much too complicated to answer with a simple admit or deny, because they incorporated by reference voluminous pretrial submission and asked the defendant to admit to large sections of a document containing numerous different facts.[49] The court found that the requests therefore failed to comply with Fed. R. Civ. P. 36(a)'s requirement that each matter be separately stated.[50]

In the instant case the Court overrules the objections to the requests that refer to the '477 patent and the DeMarco article. First, it does not find the requests improper simply because they incorporate by reference the '477 patent and DeMarco article. Unlike the *Sparton* case, the requests here do not ask Plaintiffs to admit or deny large sections of incorporated documents with numerous

---

[45]*Securities & Exch Comm'n,* 21 F.R.D. at 166.

[46]*Id.*

[47]*Sparton*, 77 Fed. Cl. at 18.

[48]*Id.*

[49]*Id.* at 19.

[50]*Id.*

facts. Instead, they ask Plaintiffs to admit that the '477 patent "discloses an anion exchange resin containing particles of iron dispersed throughout the resin," and that the DeMarco article "discloses particles of iron dispersed throughout the resin." SenGupta should have access to and be familiar with the DeMarco article, moreover, because he is one of the listed authors. Plaintiffs have not convinced the Court, moreover, that they would be unduly burdened to track down the article, read it, and then respond as to what it discloses. Finally, Defendant has persuaded the Court that both the '477 patent and DeMarco article appear relevant to the claims and defenses in this case. Defendant alleges that the '477 patent is relevant prior art references for claim construction and is relevant to its patent invalidity defense. Defendant further alleges that the '477 patent was used by the patent examiner to reject the claims of the patent-in-suit. Consequently, responses about any differences between these references and the alleged invention should help to clarify issues for the Markman process. The Court denies the request to relieve Plaintiffs from responding to requests that refer to the '477 patent and the DeMarco article.

Given the complexity of this litigation and the efforts of counsel to resolve their discovery disputes without motions, the Court finds that the first motion for protective order was substantially justified and that circumstances make an award of expenses unjust with regard to both motions. The Court declines to award expenses, therefore, pursuant to Fed. R. Civ. P. 26(c)(3) and 37(a)(5).

**IT IS THEREFORE ORDERED THAT** Plaintiffs' Motion for Protective Order (ECF No. 66) is denied. **<u>Within 30 days of the date of this Memorandum and Order</u>**, Plaintiffs shall serve their responses to Defendant's First Set of Requests for Admission to Layne and Defendant's First Set of Requests for Admission to SenGupta.

**IT IS FURTHER ORDERED THAT** Plaintiffs' Second Motion for Protective Order is

denied for failure to confer. **Within 45 days of the date of this Memorandum and Order**,

Plaintiffs shall serve their responses to Defendant's Second Set of Requests for Admission to Layne.

Dated in Kansas City, Kansas on this 25th day of January, 2011.

S/ Gerald L. Rushfelt
Gerald L. Rushfelt
United States Magistrate Judge