# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LAYNE CHRISTENSEN COMPANY and
DR. ARUP K. SENGUPTA,

        Plaintiffs,

v.                                      Case No. 09-cv-2381-JWL-GLR

BRO-TECH CORPORATION,
d.b.a. The Purolite Company,

        Defendant.

## MEMORANDUM AND ORDER

In this action for patent infringement and breach of contract, Plaintiffs allege that Defendant, a former licensee, infringed upon a patent for removal of arsenic from drinking water and breached the post-termination provisions of the license agreement. Before the Court is Defendant's Motion for Leave to File an Amended Answer (ECF No. 298). Defendant seeks to add a counterclaim and defense that SolmeteX[1] violated an implied covenant of good faith and fair dealing, an affirmative defense of unclean hands, and a defense that the non-competition clause asserted against it is void and unenforceable.[2] Plaintiffs oppose these additions on grounds of untimeliness, futility, and undue prejudice. For the reasons set out below, the motion is granted.[3]

---

[1]The parties treat Layne Christensen Company and SolmeteX as one entity. The Court will use the names interchangeably.

[2]Defendant provides several supporting exhibits, including a copy of the proposed amendment (Ex. A). *See* Exs. Mot. File Am. Answer (ECF Nos. 300 (Exs. A through P, excluding sealed Exs.) and 322 (sealed Exs. C and L)).

[3]Defendant also seeks to withdraw without prejudice defenses and/or counterclaims of laches, mistake of fact, waiver, estoppel, and unenforceability for patent misuse and withdraw counterclaims of non-infringement and invalidity. Plaintiffs do not oppose these proposed amendments. *See* Pls.' Resp. Mot. Am. Answer ("Resp.") (ECF No. 352) at 15. Accordingly, the Court grants Defendant

## I.      Procedural History

Plaintiff Layne Christensen Company ("Layne") commenced this action against defendant The Purolite Company ("Purolite") on July 21, 2009.[4]  In December 2009, the Court ordered Plaintiff to file an amended complaint to add Arup SenGupta ("SenGupta") as a necessary party.[5]  After the filing of such amended complaint (ECF No. 22), Defendant filed an Answer with counterclaims (ECF No. 23) against Plaintiffs on January 7, 2010.  Three weeks later Plaintiffs filed an answer to the counterclaims (ECF No. 24).

In its original Scheduling Order (ECF No. 28) dated March 23, 2010, the Court set a deadline of April 6, 2010 for motions to amend pleadings.  A week after that deadline Defendant filed its First Amended Answer with counterclaims (ECF No. 43) with leave of Court and without opposition by Plaintiffs.  They then filed an answer to the amended counterclaims (ECF No. 49).

On September 15, 2010, with leave of Court and without opposition, Defendant filed its Second Amended Answer with counterclaims (ECF No. 111).  On September 21, 2010, as jointly requested by the parties, the Court extended the discovery deadline to June 10, 2011, and set a deadline of April 1, 2011, for amending pleadings to add allegations of inequitable conduct without leave of Court.[6]  Plaintiffs filed an answer to the Second Amended Counterclaims (ECF No. 117) on

leave to withdraw those defenses and counterclaims.

[4]*See* Compl. (ECF No. 1).

[5]*See Layne Christensen Co. v. Purolite Co.*, No. 09-2381-JWL, 2009 WL 4611453, at *8 (D. Kan. Dec. 4, 2009).

[6]*See* Am. Scheduling Order (ECF No. 114).  In the context of this case, "inequitable conduct" refers to "an issue that 'pertains to or is unique to patent law'", *Central Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007), and involves a specific intent to deceive the Patent and Trademark Office with an affirmative misrepresentation,

September 29, 2010.

With leave of Court, Plaintiffs filed a Second Amended Complaint (ECF No. 222) on April 12, 2011, to substitute Bro-Tech Corporation, doing business as The Purolite Company, as the defendant in this action.  In this complaint, Plaintiffs assert that Defendant infringed United States Letters Patent No. 7,291,578 ("578 patent"), which Layne has an exclusive license to enforce although SenGupta is the inventor and owner.[7]  They further assert that Defendant and SolmeteX entered into an Exclusive Manufacturing, Supply, and Distribution Agreement ("Agreement")[8] that Defendant breached by failing to pay royalties and by using "intellectual property and/or confidential information" of SolmeteX in connection with the manufacturing, marketing, and selling of a product of Defendant (FerrIX™ A33E) in direct competition with SolmeteX.[9]  Plaintiffs contend that Defendant is obligated to pay royalties even though the Agreement has terminated.[10]

———————————

a failure to disclose, or the submission of false information associated with the filing and prosecution of a patent application, *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326-27 & n.3 (Fed. Cir. 2009).  The April 2011 deadline is not implicated in the current context because the proposed amended answer does not seek to add allegations of inequitable conduct within the meaning of patent law.  The parties, furthermore, neither address nor discuss this deadline in their briefing.

    [7]Second Am. Compl. ¶¶ 7-13.  According to Plaintiffs, on or about November 30, 2007, Layne acquired all assets of SolmeteX, including rights in a License Agreement dated November 25, 2003, between SolmeteX and SenGupta.  *Id.* at 2 n.1.

    [8]*See* Ex. C (ECF No. 322-1) (sealed copy of the Agreement).  At times, the parties refer to the Agreement as "the Contract."

    [9]Second Am. Compl. ¶¶ 14-27.

    [10]*Id.* ¶ 23.  Paragraphs 24 through 26 of the Second Amended Complaint further allege:

> 24. Under the Contract, Purolite agreed not to directly or indirectly use any of SolmeteX's intellectual property, either during or subsequent to the term of the Contract, including inventions, discoveries, improvements, trade secrets, proprietary or confidential information,

On April 26, 2011, Defendant filed an Answer to Second Amended Complaint (ECF No. 246) and asserted eight defenses (including lack of infringement, breach of contract by SolmeteX, invalid patent, lack of standing, and breach of implied duty of good faith and fair dealing by SolmeteX) and eight counterclaims (including breach of contract, unlawful restraint of trade, unfair competition, and recoupment) against Plaintiffs.  Plaintiffs filed an Answer to Defendant's Third Amended Counterclaims (ECF No. 264) on May 10, 2011.

Approximately a month later, Defendant filed its motion seeking leave to file the instant amended answer with defenses and counterclaims, including new assertions that the non-competition clause asserted against it is void and unenforceable[11] and Plaintiffs violated an implied covenant of

---

processes, methods, techniques, know how and technology, whether patentable or not.

25. The Contract expressly incorporates the terms of a Non-Disclosure Agreement dated March 10, 2004 which restricts Purolite's use of the confidential information of SolmeteX solely to prepare a proposal for SolmeteX.

26. Under the Contract, Purolite agreed not to use SolmeteX's intellectual property or confidential information for any reason or purpose including to compete with SolmeteX.

[11]The Seventh Defense of the proposed amended answer states in full:

The "Non-Competition" provisions of the Contract (e.g., Section 11.2) are unenforceable because, among other reasons, such provisions are not reasonably limited by geography, time, or scope, and/or because such provisions do not advance any legitimate interest of Layne, and/ or because the operation of such provisions do not reasonably protect any of Layne's legitimate interests, and/or because Layne intentionally sought to encumber Purolite with overbroad Non-Competition provisions.

Ex. A (ECF No. 300-1) at 5.

good faith and fair dealing[12] and acted with unclean hands.[13]

## II.   Legal Standard Applicable to Motion for Leave to Amend

Parties may amend pleadings "once as a matter of course" before trial if they do so within (A) twenty-one days of serving the pleading or (B) "if the pleading is one to which a responsive pleading is required," twenty-one days of service of a responsive pleading or a motion under Fed. R. Civ. P. 12(b), (e), or (f), whichever is earlier.[14]  Other amendments before trial are allowed "only with the opposing party's written consent or the court's leave."[15]  Courts "should freely give leave when justice so requires."[16]  Rule 15 is intended "to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'"[17]

Courts may deny leave to amend, however, based on "undue delay, bad faith or dilatory

---

[12]The Second Defense in the proposed amended answer states:  "As set forth below in the Counterclaims, which are incorporated as if fully set forth herein, SolmeteX materially breached the Contract.  These material breaches by SolmeteX excuse any alleged breach or failure of performance by Purolite."  *Id.* at 4.  The proposed amendment also includes a counterclaim for breach of contract and a newly asserted counterclaim that SolmeteX breached an "implied covenant of good faith and fair dealing by engaging in acts of competition against Purolite."  *See id.* at 9.  The new counterclaim also repeated the allegations of the counterclaim for breach of contract, *see id.* ¶ 28, including allegations that the Agreement "required SolmeteX not to compete against Purolite" and "provided that Purolite would be the exclusive manufacturer and supplier of the Media during the Term", *id.* ¶¶ 18, 20.

[13]The Third Defense of the proposed amended answer states in full:  "Layne's claims are barred, in whole or in part, by the doctrine of unclean hands."

[14] Fed. R. Civ. P. 15(a)(1).

[15] Fed. R. Civ. P. 15(a)(2).

[16] *Id.*; *accord Foman v. Davis*, 371 U.S. 178, 182 (1962).

[17]*Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."[18]  Additionally, a party seeking to file a motion outside a scheduling order deadline may be required to show good cause for filing the motion out of time.[19]

Whether to allow a proposed amendment, after the permissive period, addresses the sound discretion of the court.[20]  "In exercising its discretion, the court must be mindful that the Federal Rules of Civil Procedure are designed to facilitate decisions on the merits rather than on pleading technicalities."[21]

## III.   Summary of the Parties' Arguments

In support of its motion, Defendant argues that its proposed additions satisfy both the standard of good cause, required by Fed. R. Civ. P. 16(b), and the liberal amendment policy of Rule 15(a).[22]  It asserts that it had insufficient information to assert the additions before the deadline of

---

[18]*Id.* (quoting *Foman,* 371 U.S. at 182).

[19]*See Rural Water Dist. No. 4, Douglas Cnty. v. City of Eudora*, No. 07-2463-JAR-DJW, 2008 WL 1867984, at *3 (D. Kan. Apr. 24, 2008) (relying on *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1518-19 (10th Cir. 1990)).  Although the Tenth Circuit has noted the possible application of the "good cause" standard of Fed. R. Civ. P. 16(b) in a similar context, it did not apply the standard because the parties had not argued the relevancy of Rule 16(b).  *See Minter*, 451 F.3d at 1205 n.4. The court further noted, however, that the Rule 16(b) standard and the court's Rule 15 undue delay analysis were roughly similar and application of the Rule 16(b) standard would not have affected the outcome of the case.  *Id.*

[20]*See Foman,* 371 U.S. at 182; *Wilkerson v. Shinseki*, 606 F.3d 1256, 1268 (10th Cir. 2010); *Minter*, 451 F.3d at 1204.

[21]*Collins v. Wal-Mart, Inc.*, 245 F.R.D. 503, 507 (D. Kan. 2007).

[22]Def.'s Mem. Supp. Mot. Leave Am. Answer ("Mem. Supp.") (ECF No. 321) at 12.

April 6, 2010.[23]  With respect to its allegations of unclean hands and unfair dealings, Defendant contends that it first learned on March 25, 2011, that SolmeteX developed an unreasonable view of the Agreement as early as May 2005.[24]  With respect to its new defense that the non-compete provision is void and unenforceable, it contends that Plaintiffs did not specifically allege that they were asserting the post-termination clause of the Agreement (§ 11.2) until February 23, 2011, and did not explain their interpretation of that clause until May 19, 2011.[25]

Defendant also asserts that, for the following reasons, the proposed additions to its answer will not prejudice Plaintiffs:  (1) The non-competition defense is closely related to current counter-claims of breach of contract, restraint of trade, and unfair competition.  (2) All additions are based on the same Agreement and facts placed at issue by the complaint.  (3) The additions will not delay final disposition of this case or necessitate additional written discovery or further depositions, because Plaintiffs were aware of the proposed additions prior to "the vast majority of the fact depositions" in this case.  (4) The additions essentially assert the same basic issues already present in the case, i.e., performance and enforcement of the Agreement.[26]  Defendant finally argues that its proposed additions are not futile.[27]

Plaintiffs oppose the proposed additions.  They argue that Defendant has not shown good cause to extend the expired deadline to amend pleadings, because it has known the alleged facts to

---

[23]Mem. Supp. at 12-14; Purolite's Reply ("Reply") (ECF No. 348) at 1-4.

[24]Mem. Supp. at 13-14; Reply at 1.

[25]Mem. Supp. at 12-13; Reply at 2.

[26]Mem. Supp. at 15-16; Reply at 7.

[27]Mem. Supp. at 16-17; Reply at 5-7.

the proposed additions for years.[28]   They further argue that allowing the new claim and defenses

would be futile, because the Agreement between the parties expressly permits the conduct of which

Defendant complains and because it has alleged insufficient facts to show they are plausible.[29]  Lastly

they argue that the amendments would unduly prejudice them, because Defendant moved to amend

just one day before the close of discovery and that they did not know about the proposed additions

while pursuing prior discovery.[30]

## IV.    Analysis

### A.    Good Cause

As noted previously, when the deadline for amending pleadings set in the scheduling order

has passed, as is the case here, the moving party may be required to show good cause under Fed. R.

Civ. P. 16(b)(4) to modify the scheduling order.[31]  Although the Tenth Circuit has expressly declined

to decide whether a party must satisfy the requirements of Rule 16(b) and Rule 15(a) in such circum-

stances,[32] this Court routinely applies a two-step analysis based on the two rules in these situations.[33]

---

[28]Resp. at 2-8.

[29]*Id.* at 3, 9-13.

[30]*Id.* at 3, 13-14.

[31]*See, supra*, note 19.  Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent."  In addition, the scheduling order entered in this case states that the schedule "shall not be modified except by leave of court upon a showing of good cause."  *See* Scheduling Order at 10.

[32]*See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006).

[33]*See Capital Solutions, LLC v. Konica Minolta Bus. Solutions U.S.A., Inc.*, Nos. 08-2027-JWL-DJW, 08-2191-JWL-DJW, 2009 WL 3711574, at *8 (D. Kan. Nov. 3, 2009) (listing cases before and after *Minter* that applied the two-step analysis).

Consequently, when a proposed amendment implicates Rule 16(b)(4), this Court first determines whether the movant has established "good cause" to modify the scheduling order "so as to justify allowing the untimely amendment."[34]  Only if the movant establishes good cause does the Court proceed to the more liberal standard for allowing an amendment under Rule 15(a).[35]

To establish good cause under Rule 16(b), the moving party must show that "it could not have reasonably met the scheduled deadline[]" even had it acted with due diligence.[36]  This compels more than showing "excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice."[37]  Neither an absence of prejudice nor carelessness provides a basis for finding good cause.[38]  Whether a party has established good cause to modify a deadline under Rule 16(b)(4) lies within the court's discretion.[39]

Defendant moved to amend its answer on June 10, 2011, approximately fourteen months after the April 10, 2010 deadline for amending pleadings.[40]  It justifies the failure to meet the deadline by

---

[34]*Id.*

[35]*See Boatright v. Larned State Hosp.*, No. 05-3183-JAR, 2007 WL 2693674, at *5-6 (D. Kan. Sept. 10, 2007) (recognizing the Rule 15(a) standard as more lenient than the "good cause" standard of Rule 16(b)).

[36]*Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 301 (D. Kan. 1996) (quoting *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995)).

[37]*Id.* (quoting *Broitman v. Kirkland (In re Kirkland )*, 86 F.3d 172, 175 (10th Cir. 1996)).

[38]*Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 497 (D. Kan. 1998).

[39]*See Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009).

[40]Notably, Plaintiffs filed an amended complaint with leave of Court on April 12, 2011, which necessitated the filing of an answer by May 3, 2012.  *See* Fed. R. Civ. P. 12(a)(1)(A)(1). Defendant filed a responsive answer on April 26, 2011.  Although not addressed by the parties, Defendant had no need to seek leave to file an amended answer during this period.

9

pointing to new information produced during discovery.  Although Plaintiffs quarrel with the alleged newness of the information, Defendant has carried its burden to show good cause for filing its motion to amend after the deadline.

With respect to the assertions of unclean hands and unfair dealings, production of 715 documents on March 25, 2011,[41] provided Defendant new information that SolmeteX believed as early as May 2005 that there may be a "loophole" in the Agreement at issue in this case.[42]  With respect to the new defense that the non-compete provision (§ 11.2) is void and unenforceable, Defendant adequately explains that, while Plaintiffs claimed generally in May 2010 that it breached § 11.2, they did not specifically claim a breach of the post-termination clauses of that section until February 23, 2011.[43]  Further, Plaintiff Layne elaborated about the temporal and geographic limitations of that section when it answered an interrogatory on May 19, 2011.[44]  Given the new information obtained well-after the passing of the deadline for amendments, Defendant has shown good cause for filing

---

[41]See Ex. K (ECF No. 300-11).

[42]The production included a May 27, 2005 email that states in pertinent part:

"After taking a little time to look at the Purolite agreement I think we may be in a much better situation than I initially anticipated.  When you read the definition of the product (which is referred to as Media) it is defined as being on a Purolite bead. Given that we have a big loop hole.  I think if we use a non-Purolite substrate we can have any body we want make it."

See Ex. L (ECF No. 300-12).

[43]Compare Ex. D (ECF No. 300-4) at 5 (identifying § 11.2 generally) with Ex. H (ECF No. 300-8) at 10 (specifying the portions of § 11.2 alleged to have been breached).

[44]See Ex. I (ECF No. 300-9) at 1-2.

his motion outside that deadline.[45]

### B.    Undue Prejudice

Plaintiffs also argue that allowing the addition of new defenses or counterclaims at this time would unduly prejudice them, because discovery has closed and they had no knowledge of the proposed additions during discovery.[46]

"Absent flagrant abuse, bad faith, futility of amendment, or truly inordinate and unexplained delay, prejudice to the opposing party is the key factor in deciding a motion to amend."[47]  In fact, the prejudice factor is the "most important" consideration in the decision.[48]  Typically, courts "find prejudice only when the amendment unfairly affects" a party's ability to prosecute or defend the lawsuit.[49]  This most often occurs when the amendment "raise[s] significant new factual issues" or arises from a different theory or subject matter than previously asserted.[50]  To justify denying leave to amend, the proposed amendment must "work an injustice" to an opposing party.[51]  "The party

---

[45]For similar reasons, the Court finds no undue delay in filing the instant motion to amend. As recognized in *Minter v. Prime Equipment Company*, the good cause standard is roughly similar to the Tenth Circuit's undue delay analysis.  *See* 451 F.3d 1196, 1205 n.4 (10th Cir. 2006).

[46]Resp. at 3, 13-14.

[47]*Rubio ex rel. Z.R. v. Turner Unified Sch. Dist. No. 202*, 453 F. Supp. 2d 1295, 1307 (D. Kan. 2006).

[48]*Minter*, 451 F.3d at 1207.

[49]*Id.* at 1208.

[50]*Id.*; *accord Acker v. Burlington N. & Santa Fe R. Co.,* 215 F.R.D. 645, 654  (D. Kan. 2003) (stating that prejudice means undue difficulty in prosecuting or defending a lawsuit due to "a change of tactics or theories on the part of the other party") (quoting *Heslop v. UCB, Inc.*, 175 F. Supp. 2d 1310, 1313 (D. Kan. 2001)).

[51]*United States v. Sturdevant*, No. 07-2233-KHV-DJW, 2008 WL 4198598, at *3 (D. Kan. Sept. 11, 2008) (quoting *Koch v. Koch Indus.*, 127 F.R.D. 206, 209-10 (D. Kan. 1989)).

opposing the amendment has the burden of showing prejudice."[52]

Plaintiffs have not carried their burden to show prejudice. Although they contend that they had no knowledge of the proposed additions while they pursued discovery, Defendant has provided an email sent to Plaintiffs dated May 24, 2011, which purports to attach a copy of the proposed amended answer.[53] Regardless, the proposed additions are closely related in fact and theory to issues already existing in the case. The proposed additions raise no new significant factual issues. Like issues already in the case, the additions relate to the performance and enforcement of the same Agreement. Plaintiffs have not shown that the additions would unfairly affect their ability to prosecute or defend this lawsuit. They have shown no resulting injustice by allowing the proposed amendment. For these reasons the Court finds no undue prejudice to warrant denying the motion.

## C.     Futility

Plaintiffs also urge the Court to deny the proposed additional counterclaim and defenses on grounds of futility.[54] They argue generally that the additions are futile, because "the complained of conduct is expressly permitted by the Agreement between the parties."[55] They also argue futility on grounds that the additions are not plausible, due to insufficiently alleged facts.[56] With respect to the claimed unclean hands and violation of an implied covenant of good faith and fair dealing, they contend that "there is nothing in the Agreement which prohibited SolmeteX from contracting with

---

[52]*Acker*, 215 F.R.D. at 654.

[53]*See* Ex. O (ECF No. 300-15).

[54]Resp. at 3, 9-13.

[55]*Id.* at 3.

[56]*Id.* at 10, 13.

another company to manufacture an arsenic removal product using SolmeteX's chemistry so long as the product was <u>not</u> made using a Purolite base bead."[57] They further contend that the Agreement imposes no limitations on non-sales activities of SolmeteX.[58]

Courts may deny leave to amend on grounds of futility if the proposed amendment "would be subject to dismissal for any reason."[59] The party asserting futility of amendment has the burden to establish futility.[60] The parties assert different standards for evaluating the futility of the proposed additions.[61] Although not mentioned by the parties, there is also disagreement among the district courts as to what pleading standard applies to stating a defense in contrast to a claim.[62] Given the

---

[57]*Id.* at 10.

[58]*Id.* at 12-13.

[59]*Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001); *accord Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007); *Beckett ex rel. Cont'l W. Ins. Co. v. United States*, 217 F.R.D. 541, 543 (D. Kan. 2003) (noting in context of a motion to amend an answer, that a district court justifiably denies a motion to amend as futile "if the proposed amendment could not withstand a motion to dismiss or otherwise fails to state a claim").

[60]*Carefusion 213, LLC v. Prof'l Disposables, Inc.*, Civ. A. No. 09-2616-KHV-DJW, 2010 WL 4004874, at *5 (D. Kan. Oct. 12, 2010).

[61]*Compare* Mem. Supp. at 16 ("A court will dismiss for failure to state a claim only when 'it appears beyond a doubt that the [party] can prove no set of facts in support of his claims which would entitle him to relief.'") *with* Resp. at 10 (applying plausibility standard set out in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). With *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the plausibility standard replaced the no-set-of-facts standard for pleading "claims for relief." *See Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 649 (D. Kan. 2009).

[62]*Compare Bowers v. Mortg. Elec. Registration Sys.*, No. 10-4141-JTM-DJW, 2011 WL 2149423, at *3-5 (D. Kan. June 1, 2011) (holding that different considerations apply to pleading defenses and claims); *Falley v. Friends Univ.*, ___ F. Supp. 2d ___, No. 10-1423-CM, 2011 WL 1429956, at *3 (D. Kan. Apr. 14, 2011) (same) *with Hayne*, 263 F.R.D. at 651 (applying same standard for pleading claims and defenses). In addition, approximately four months prior to *Hayne*, this district considered a motion to strike asserted affirmative defenses on grounds that the defenses did not satisfy pleading requirements of Fed. R. Civ. P. 8(a)(2) in that they failed to state facts in

split in the district since this Court decided *Hayne*, the Court will consider the proposed new defenses separately from the newly asserted counterclaim.

      1.  Futility of Counterclaim

      Plaintiffs essentially argue that the new counterclaim, i.e., violation of an implied covenant of good faith and fair dealing, is futile because they have done nothing to violate the Agreement.[63]

      When a party argues futility with respect to a counterclaim, the court accepts the facts alleged in the counterclaim as true to determine whether the proposed claim would survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[64] Like all claims for relief, counterclaims must satisfy Fed. R. Civ. P. 8(a)(2) to survive a Rule 12(b)(6) motion to dismiss.[65] Rule 8(a)(2) requires "a short and

---

support. *See United States ex rel. Smith v. Boeing Co.*, No. 05-CV-1073-WEB, slip op. at 4 (D. Kan. Aug. 13, 2009). The court denied the motion both as untimely and under traditional standards for motions to strike under Fed. R. Civ. P. 12(f). *See id.* at 4-5. Subsequent to the split in this district, one court recognized the split and affirmatively stated that it "will not deviate from the traditional standard of review with respect to Rule 12(f) motions." *United States ex rel. Minge v. TECT Aerospace, Inc.*, No. 07-1212-MLB, 2011 WL 2473076, at *2-3 (D. Kan. June 21, 2011).

      The split goes well beyond the District of Kansas. *See, e.g., Bowers*, 2011 WL 2149423, at *3 & nn. 28-29 (citing cases); *Hayne*, 263 F.R.D. at 649-50 (same); *Lane v. Page*, 272 F.R.D. 581, 589 & nn.5-6 (D.N.M. 2011) (same). No circuit court has addressed the split. *See Bowers*, 2011 WL 2149423, at *3. In 2010, however, the Tenth Circuit indicated that the pleading rules for affirmative defenses "only require a defendant to state in short and plain terms its defenses." *Cagle v. James Street Group*, 400 F. App'x 348, 355 (10th Cir. 2010) (quoting *Wisland v. Admiral Beverage Corp.*, 119 F.3d 733, 737 (8th Cir. 1997)). One court has interpreted *Cagle* as supporting different pleading requirements for claims and defenses. *See Michaud v. Greenberg & Sada, P.C.*, No. 11-CV-01015-RPM-MEH, 2011 WL 2885952, at *3-4 (D. Colo. July 18, 2011).

      [63]*See* Resp. at 3, 10-13.

      [64]*In re Indep. Serv. Orgs. Antitrust Litig.*, 161 F.R.D. 107, 110 (D. Kan. 1995).

      [65]*See McDowell-Jacobs v. Huebner*, No. 06-2269-KHV-GLR, 2006 WL 2620045, at *2 (D. Kan. Sept. 12, 2006); *Hand v. Walnut Valley Sailing Club*, No. 10-1296-SAC, 2011 WL 2938109, at *1 (D. Kan. June 29, 2011) (report and recommendation). Prior to stylistic amendments to Rule 8 in 2007, *see* Fed. R. Civ. P. 8 (2007 amend.), Rule 8(a) stated: "A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall

plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests."[66]

To plead a claim in compliance with Rule 8(a)(2), parties must provide "enough facts to state a claim to relief that is plausible on its face."[67] Although "detailed factual allegations" are unnecessary, parties must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[68] Alleged facts must "raise a right to relief above the speculative level."[69]

Claims have facial plausibility when the pleader provides sufficient factual content to allow a "reasonable inference" that an opposing party "is liable for the misconduct alleged."[70] This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that [an opposing party] has acted unlawfully."[71] When pled facts are "merely consistent with" lia-

---

contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief . . .." *See Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1251 n.34 (D. Kan. 2004). Paragraph 7 of Form 30 of the Appendix of Forms further supports the principle that counterclaims are to be pled the same way as claims in the complaint. *See* Fed. R. Civ. P. 84 ("The forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate.").

[66]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

[67]*Id.* at 570; *accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

[68]*Twombly*, 550 U.S. at 555; *accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

[69]*Twombly*, 550 U.S. at 555.

[70]*Iqbal*, 129 S. Ct. at 1949.

[71]*Id.*

bility, the pleading falls "short of the line between possibility and plausibility" of being entitled to relief.[72]  Furthermore, when parties "have not nudged their claims across the line from conceivable to plausible," the claims are subject to dismissal.[73]

When resolving motions to dismiss under Rule 12(b)(6), courts determine whether the non-movant "is entitled to offer evidence to support the claims", not whether that party "will ultimately prevail."[74]  In sum, this Court may find a newly proposed claim futile, if viewing the well-pleaded factual allegations as true and in the light most favorable to the pleader, the pleading nevertheless contains insufficient facts to state a claim plausible on its face or otherwise fails as a matter of law.

The assertion by Plaintiffs that their conduct does not violate any implied covenant of good faith and fair dealing is based entirely on their view of the Agreement between the parties.[75]  They do not even set out the elements of a plausible claim for breach of an implied covenant of good faith and fair dealing to show that the counterclaim fails in some respect.[76]  Defendant, on the other hand, contends that it has adequately alleged a breach of that implied covenant because Plaintiffs have taken an unreasonable view of the Agreement and justified numerous breaches based on that view.[77]  In addition, Defendant suggests that it has adequately stated a claim for breach of the implied covenant because it has pointed to specific provisions in the Agreement, and alleged that the conduct of

---

[72]*Twombly*, 550 U.S. at 557; *accord Iqbal*, 129 S. Ct. at 1949.

[73]*Twombly*, 550 U.S. at 570; *accord Iqbal*, 129 S. Ct. at 1950-51.

[74]*Raytheon Aircraft Co. v. United States*, 501 F. Supp. 2d 1323, 1327 (D. Kan. 2007).

[75]*See* Resp. at 3, 9-13.

[76]*See id.*

[77]Reply at 5.

Plaintiffs failed to abide by the good faith spirit of those provisions.[78]

Viewing the allegations in a light most favorable to Defendant,[79] it appears that Defendant has adequately stated a plausible counterclaim for breach of the implied covenant of good faith and fair dealing.  Plaintiffs, moreover, have not carried their burden to show the claim to be futile.

          2.  Futility of Defenses

Plaintiff also argues that the new defenses[80] asserted by Defendant in the proposed amended answer are futile.[81]

Courts may find an asserted defense futile.[82]  Instead of Fed. R. Civ. P. 12(b)(6), however, the appropriate standard for determining the viability of a defense lies within Fed. R. Civ. P. 12(f),

---

[78]*Id.* (citing *Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1359 (D. Kan. 1996)).  As stated in *Wayman*, to succeed

> on an implied duty of good faith and fair dealing theory under Kansas law, [the pleader] must (1) plead a cause of action for "breach of contract," not a separate cause of action for "breach of duty of good faith," and (2) point to a term in the contract "which the [opposing party] allegedly violated by failing to abide by the good faith spirit of that term."

923 F. Supp. at 1359.

[79]*See* Ex. A ¶¶ 18, 20, 28-31.

[80]As mentioned previously, Defendant seeks to add three defenses:  (1) a violation of an implied covenant of good faith and fair dealing, (2) unclean hands, and (3) the non-competition clause is void and unenforceable.

[81]*See* Resp. at 3, 10-13.

[82]*See Strunk v. Lear Siegler, Inc.*, 844 F. Supp. 1466, 1474 (D. Kan. 1994) (finding defense precluded by precedent without discussing standard under which to gauge futility).

17

which permits a party to move to strike "an insufficient defense" from a pleading.[83]  Within the

meaning of Rule 12(f), a "defense is insufficient if it cannot succeed, as a matter of law, under any

circumstances."[84]  To warrant striking a defense, its insufficiency must be "clearly apparent" and "no

factual issues exist that should be determined in a hearing on the merits."[85]  Furthermore, absent

prejudice to an opposing party, courts should not strike a defense.[86]  Striking a defense should further

the purpose of Rule 12(f) "to minimize delay, prejudice and confusion by narrowing the issues for

discovery and trial."[87]  The party seeking to strike a pleading or part thereof has a "'demanding' bur-

den" to show adequate grounds under Rule 12(f).[88]

Whether to strike a defense is within the sound discretion of the Court.[89]  That discretion

includes deferring a "ruling on the sufficiency of a defense until trial to avoid costly and inefficient

---

[83]*See DZ Bank AG Deutsche Zentral Genossenschaftsbank v. All Gen. Lines Ins., LLC*, No. 10-2126-CM-JPO, 2011 WL 2579824, at *3 (D. Kan. June 28, 2011) (recognizing that Rule 12(b)(6) is inapplicable with respect to attacks on a defense).

[84]*Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 648-49 (D. Kan. 2009).

[85]*Id.* at 649.

[86]*Compare Wilhelm v. TLC Lawn Care, Inc.*, No. 07-2465-KHV, 2008 WL 474265, at *2 (D. Kan. Feb. 19, 2008) (stating that courts "should decline to strike material from a pleading unless that material has no possible relation to the controversy and may prejudice the opposing party"); *United States ex rel. Smith v. Boeing Co.*, No. 05-CV-1073-WEB, slip op. at 5 (D. Kan. Aug. 13, 2009) (citing *Wilhelm* for same proposition) *with United States ex rel. Minge v. TECT Aerospace, Inc.*, No. 07-1212-MLB, 2011 WL 2473076, at *3 (D. Kan. June 21, 2011) (citing *Wilhelm* and stating "a Rule 12(f) motion may only be granted when the plaintiff has shown prejudice").

[87]*See Hayne*, 263 F.R.D. at 649.

[88]*Roderick Revocable Living Trust v. XTO Energy, Inc.*, No. 08-1330-JTM, 2009 WL 603641, at *2 (D. Kan. Mar. 9, 2009); *accord Home Quest Mortg., L.L.C. v. Am. Family Mut. Ins. Co.*, 393 F. Supp. 2d 1096, 1100 (D. Kan. 2005) (recognizing that movant has the burden).

[89]*Hayne*, 263 F.R.D. at 649.

duplication of evidence."[90]  Even when striking a defense is warranted, the Court may grant leave

to amend to address the insufficiency.[91]  When exercising that discretion courts consider "the pur-

pose of pleading an affirmative defense is to provide the plaintiff with fair notice."[92]  Courts gener-

ally disfavor the "drastic remedy" of striking pleadings or parts thereof because parties often move

to strike "as a dilatory tactic."[93]

     Under this well-settled, traditional review regarding striking defenses, Plaintiffs have not

carried their burden to show futility of amendment or grounds for striking the defenses.  They have

not shown that the defenses cannot succeed under any circumstances.  Nor have they shown a clearly

apparent insufficiency with an absence of factual issues.  Moreover, as discussed in the prior section,

they have shown no prejudice from the proposed additions.  For these reasons, the proposed addi-

tions should be permitted.

     Although some courts, including this one, consider whether asserted defenses satisfy the

---

[90]*Evello Invs., N.V. v. Printed Media Servs., Inc.*, 158 F.R.D. 172, 173 (D. Kan. 1994) (denying motion to determine sufficiency of defense and motion to strike).

[91]*See Hayne*, 263 F.R.D. at 651-52 (granting motion to strike defenses but also granting leave to amend to cure the pleading deficiencies); *Bowers v. Mortg. Elec. Registration Sys.*, No. 10-4141-JTM-DJW, 2011 WL 2149423, at *4 (D. Kan. June 1, 2011) (recognizing that "[t]he common rem-edy for striking defenses is to allow amendment, especially in early stages of litigation"); *Crockett v. Heartland Habitat for Humanity, Inc.*, No. 10-2333-JTM-KGG, 2011 WL 195791, at *1-2 (D. Kan. Jan. 20, 2011) (granting unopposed motion to amend answer and recommending that motion to strike be denied without prejudice).

[92]*Bowers*, 2011 WL 2149423, at *3; *accord Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971) ("The purpose of . . . pleading [an affirmative defense] is to give the opposing party notice of the [defense] and a chance to argue, if he can, why the imposition of [the defense] would be inappropriate."); *Ahmad v. Furlong*, 435 F.3d 1196, 1201 (10th Cir. 2006) (quoting *Blonder-Tongue*).

[93]*Bowers*, 2011 WL 2149423, at *2.

pleading requirements of *Twombly* and *Iqbal* in the context of a motion to strike brought pursuant to Rule 12(f),[94] the current context differs materially because Rule 12(f) comes into play by virtue of an assertion of futility in response to a motion to amend an answer to assert new defenses.  As the parties opposing the proposed amendment, Plaintiffs have the burden at all times to show futility of amendment.  Whether a defense satisfies the pleading requirements has no bearing on its ultimate viability because, as already mentioned, if the Court were to find the defenses insufficient under a *Twombly*/*Iqbal* requirement, the preferred remedy is to allow Defendant to file a properly pled amendment to cure the insufficiency.  In the current context, the better approach is to defer a definitive ruling on the pleading sufficiency of the defenses until later in the litigation process, if raised, and to allow the amendment as currently proposed.[95]

     **IT IS THEREFORE ORDERED** that Defendant's Motion for Leave to File an Amended Answer (ECF No. 298) is granted, as set forth herein.  Defendant shall electronically file its Amended Answer to Second Amended Complaint forthwith.

     Dated in Kansas City, Kansas on this 29th day of August, 2011.


                         S/ Gerald L. Rushfelt
                         Gerald L. Rushfelt
                         U.S. Magistrate Judge

---

[94]See note 62 for more information regarding the appropriate pleading standard for defenses.

[95]To the extent the additions may require further discovery (a matter not shown by the present briefing), the Court notes that it has recently extended the discovery deadline to September 1, 2011.