# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**LAYNE CHRISTENSEN COMPANY,**
**and DR. ARUP SENGUPTA,**

        **Plaintiffs,**                           **CIVIL ACTION**

**v.**                                    **No. 09-2381-JWL-GLR**

**BRO-TECH CORPORATION, d/b/a**
**THE PUROLITE COMPANY,**

        **Defendant.**

## MEMORANDUM AND ORDER

In this action for patent infringement and breach of contract, Plaintiffs Layne Christensen Company ("Layne") and Dr. Arup SenGupta ("SenGupta") allege that Defendant Bro-Tech Corporation, doing business as The Purolite Company ("Purolite"), a former licensee, infringed upon a patent for removal of arsenic from drinking water and breached the post-termination provisions of the license agreement. Before the Court is Plaintiffs Layne and SenGupta's Motion to Compel Discovery (ECF No. 295). Pursuant to Fed. R. Civ. P. 37, Plaintiffs seek an order to compel Defendant to (1) produce its owner and Executive Vice President, Don Brodie, for deposition at its expense so that he can answer questions regarding his and Defendant's criminal convictions; (2) fully answer Interrogatories 6 and 7 propounded by SenGupta; and (3) fully comply with Layne's Requests for Production ("RFP") 100 through 117. They also seek sanctions against Defendant or its counsel for obstructing discovery. For the reasons set out below, the Court grants the motion in part and denies it in part.

## I.    Relevant Factual Background

In September 2010, Plaintiffs deposed Jacob Brodie, pursuant to Fed. R. Civ. P. 30(b)(6).[1] Mr. Brodie answered questions regarding a criminal case against Purolite and some personnel.[2]  On April 20, 2011, Layne served its Second Set of Document Requests and SenGupta served his First Set of Interrogatories on Defendant.[3]  On May 23 and 24, Defendant responded and objected to that discovery.[4]  On May 25, 2011, Plaintiffs deposed Don Brodie in New York.[5]

On June 8, 2011, Plaintiffs filed the instant motion to compel discovery of the criminal convictions.  Defendant opposes the motion.  Plaintiff has filed a reply brief.  The motion is ripe for ruling.

## II.    Interrogatories at Issue

Through Interrogatories 6 and 7, SenGupta seeks information regarding criminal convictions of Defendant, its owners and executives, and any of its witnesses.  More specifically, Interrogatory 6 asks Defendant to

> Identify in detail any and all criminal convictions (excluding minor traffic violations) entered against Bro-Tech Corporation, d/b/a The Purolite Company, Bro-Tech Corporation, The Purolite Company (collectively "Purolite"), their affiliates, parents, and subsidiaries of Purolite, owners of Purolite, and/or executives of Purolite, past and

---

[1] *See* Tr. Dep. Jacob Brodie (ECF No. 347-1) at 1, 7.  Jacob Brodie is Defendant's Vice President of Sales.  *See* Purolite's Mem. Opp'n Pls' Mot. Compel ("Mem. Opp'n") (ECF No. 347) at 6.

[2] *See* Tr. Dep. Jacob Brodie at 7-8, 148-49.

[3] *See* Cert. Service (ECF No. 237); Layne's Second Request Produc. Docs. to Purolite (ECF No. 296-5); SenGupta's First Set of Interrogs. to Purolite (ECF No. 296-3).

[4] *See* Def. Purolite's Resps. Pl. SenGupta's First Set of Interrogs. (ECF No. 296-4); Def. Purolite's Resps. & Obj'ns to Layne's Second Requests Produc. Docs. (ECF No. 296-6).

[5] Tr. Dep. of Don Brodie at 1 (ECF No. 296-8).

present.  This specifically includes but is not limited to Bro-Tech Corporation, Don Brodie, Stephan Brodie, James Sabzali, and Jacob Brodie.  Such conviction shall be disclosed regardless of whether it was the result of a plea agreement, a plea of nolo contendre [sic], or any other voluntary consent to judgment.  For each conviction, please identify the specific crime(s) for which the individual or entity was convicted, the date of said conviction(s), the sentence or punishment for said conviction(s), and-if the individual was confined as punishment for the conviction-the date on which the individual was released from confinement.[6]

Interrogatory 7 asks Defendant to

Identify in detail any and all criminal convictions (excluding minor traffic violations) incurred by any individual Purolite reasonably anticipates calling as a witness at trial. Such conviction shall be disclosed regardless of whether it was the result of a plea agreement or a plea of nolo contendere, or any other voluntary consent to judgment. For each conviction, please identify the specific crime(s) for which the individual or entity was convicted, the date of said conviction(s), the sentence or punishment for said conviction(s), and-if the individual was confined as punishment for the conviction-the date on which the individual was released from confinement.

Defendant objected to the interrogatories on grounds they were unduly broad and burdensome for seeking "any and all criminal convictions", sought irrelevant information, and were not reasonably calculated to lead to the discovery of admissible evidence.  It also objected that the multiple subparts of the interrogatories violated the maximum number of interrogatories.  With respect to Interrogatory 6, it further objected to the extent the interrogatory asked it to gather and produce public information equally accessible to SenGupta.  Lastly it objected that Interrogatory 7 was premature in that trial witnesses had not yet been identified.

### A.  Relevancy

In response to the motion, Defendant reasserts its objections of irrelevancy.  It contends that

---

[6]Although Interrogatory 6 asks for information about "Stephan Brodie" instead of "Stefan Brodie", Defendant asserted no objection to the interrogatory based on the misspelling. *See* ECF No. 296-4 at 9-10.  It also does not rely on the misspelling in opposing the motion to compel. *See generally* Mem. Opp'n at 1-22.  For purposes of this memorandum and order, the Court will not differentiate between Stephan and Stefan.

the interrogatories ask for information not allowed by Fed. R. Evid. 609.[7]

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the general scope of discovery.[8] Since amendments in 2000, the rule provides "a two-tiered discovery process; the first tier being attorney-managed discovery of information relevant to any claim or defense of a party, and the second being court-managed discovery that can include information relevant to the subject matter of the action."[9] Under this two-tiered process, objections on grounds of relevancy require the courts to first "determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action."[10]

At the discovery stage of litigation, relevancy is broadly construed and courts should consider requests for discovery relevant "if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party"[11] or "to the subject matter of the action."[12] For purposes of discovery, the concept of relevancy is clearly broader than admissibility at trial.[13] In fact, Rule

---

[7]*See* Mem. Opp'n at 15-16.  Rule 609 governs admissibility of impeachment evidence for conviction of a crime.

[8]Rule 26(b)(1) provides:  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."

[9]*In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 (10th Cir. 2009).

[10]*Id.* (quoting Fed. R. Civ. P. 26(b)(1) (2000 amend.)).

[11]*Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 523 (D. Kan. 2010).

[12]*Etienne v. Wolverine Tube, Inc.*, 185 F.R.D. 653, 656 (D. Kan. 1999) (quoting  *Smith v. MCI Telecomms. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991)).  Despite the changes to Rule 26(b)(1) in 2000, the standard enunciated in "*Etienne* remains good law."  *Sheldon v. Vermonty*, 204 F.R.D. 679, 690 n.7 (D. Kan. 2001).

[13]*In re Cooper Tire & Rubber Co.*, 568 F.3d at 1189; *High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM, 2011 WL 3241432, at *4 (D. Kan. July 29, 2011).

26(b)(1) specifically states that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." The ultimate admissibility of requested information lies within the province of the trial court, and does not generally affect its discoverability.[14]

When the relevancy of requested discovery is not apparent, the party seeking the discovery has the burden to show its relevance.[15]  On the other hand, when requested discovery appears relevant, the party objecting to the discovery has the burden to show that the discovery does not fall within the broad scope of relevance set out in Rule 26(b)(1) or "is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."[16]

A party's criminal history may be relevant to issues of credibility.[17]  Evidence of prior dishonesty affects the credibility of testimony and claims.[18]  As recognized in the 2000 amendments to Rule 26(b)(1), furthermore, "information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses might be properly discoverable" as relevant to the claims or defenses.  Information about all convictions of a party is discoverable so that requesting

---

[14]*Orleman v. Jumpking, Inc.*, No. 99-2522-CM, 2000 WL 1114849, at *2 (D. Kan. July 11, 2000).

[15]*Mackey v. IBP, Inc.*, 167 F.R.D. 186, 193 (D. Kan. 1996).

[16]*Id.* (citation omitted).

[17]*Abraham v. B.G. Boltons' Grille & Bar*, No. 06-1281-MLB, 2007 WL 1146585, at *5 (D. Kan. Apr. 17, 2007).

[18]*Jackson v. Coach, Inc.*, No. 07-2128-JTM-DWB, 2008 WL 782635, at *5 (D. Kan. Mar. 20, 2008).

parties "may make their own determination as to whether the conviction falls within Fed. R. Evid. 609(a)(2) and so that they may raise whatever arguments they deem necessary at trial regarding the conviction's admissibility."[19]  To warrant a request for information about the criminal histories of non-party witnesses, however, the requesting party must have "a good faith reason to believe the individuals at issue have convictions and/or guilty pleas in their past."[20]

In this instance, the interrogatories appear facially relevant only to the extent that Interrogatory 6 seeks information about criminal convictions of Defendant and the four specifically identified owners or top executives of Defendant.  The briefing clearly reflects that Purolite, its principals Don Brodie and Stefan Brodie, and two employees, including James Sabzali, were previously convicted of violating the Trading With the Enemy Act ("TWEA").[21]  Although Jacob Brodie was not prosecuted, he did testify on behalf of Purolite in the criminal proceedings.[22]  Given these known convictions, the nature of Purolite's business structure, and Jacob Brodie's Rule 30(b)(6) designation in this case, SenGupta had a good faith basis to seek discovery of criminal convictions of Defendant (whether under the name of Bro-Tech Corporation or Purolite) and the four individuals identified in the interrogatory.  Defendant thus has the burden to show that Interrogatory 6 seeks irrelevant information about criminal convictions to that extent.  For the remainder of Interrogatory 6 and for all of Interrogatory 7, SenGupta has the burden to show their relevancy.

SenGupta has not carried his burden to show that Interrogatory 6 seeks relevant information

---

[19]*Bradley v. Val-Mejias*, No. 00-2395-GTV, 2001 WL 1249339, at *5 (D. Kan. Oct. 9, 2001).

[20]*Jackson*, 2008 WL 782635, at *5 n.5.

[21]Mem. Opp'n at 5-6.

[22]*Id.* at 6-7 (citing Ex. C, Tr. Dep. Jacob Brodie at 7-8).

to the extent it seeks information about unnamed affiliates, parents, and subsidiaries of Defendant or unnamed past or present owners or executives.  He has likewise not carried his burden to show that Interrogatory 7 seeks relevant information about convictions of unidentified witnesses.  Plaintiffs merely argue that the criminal backgrounds of witnesses are relevant because they may be introduced to impeach the witness at trial.[23]  That argument is insufficient to carry SenGupta's burden when the interrogatories fail to adequately identify the witnesses.  To the extent noted, the Court sustains the objection based on irrelevancy asserted against Interrogatories 6 and 7.[24]

In response to the motion, Defendant argues that Interrogatory 6 seeks irrelevant information in its entirety because Fed. R. Evid. 609(a) merely allows a party to introduce evidence that a witness has been convicted of a crime that is either a felony or required proof that the witness committed a dishonest act or made a false statement.[25]  Defendant, however, focuses on admissibility under Rule 609 rather than discoverability under the rules of discovery.[26]  Defendant has not carried its burden to show that Interrogatory 6 seeks irrelevant information regarding the identified entities and individuals.  Its relevancy objection to Interrogatory 6 is overruled to this extent.

---

[23]Mem. Supp. Mot. Compel ("Mem Supp.") (ECF No. 296) at 1, 6.

[24]Additionally, even if the interrogatories sought information relevant to the subject matter of this case, the Court finds no good cause to order the requested discovery, because Plaintiffs have provided no good faith reason to believe the unidentified witnesses have past convictions.

[25]Mem. Opp'n at 15-16.

[26]Rule 609 only addresses admissibility of evidence of a conviction for impeachment purposes.  As recognized in the notes following the rule, convictions may be offered and admitted for purposes unrelated to a witness's character for untruthfulness.  *See* Fed. R. Evid. 609 (1990 and 2006 amend.).

### B.  Other Objections to Interrogatory 6[27]

In response to the motion to compel, Defendant also reasserts its objections that Interrogatory 6 is unduly broad and burdensome for seeking "any and all criminal convictions." It further objects to extent the interrogatory asks it to gather and produce public information equally accessible to SenGupta.

The phrase "any and all criminal convictions" does not make the interrogatory unduly broad.[28]  Defendant, furthermore, has not shown that answering the interrogatory would be unduly burdensome.[29]  Additionally, the interrogatory does not ask Defendant to gather and produce public information equally accessible to the parties.   The Court overrules all of these objections to Interrogatory 6.[30]

## III.    Requests for Production at Issue

By Requests for Production 100 through 115, Layne seeks "[a]ny and all documents or materials that detail, discuss, show, or reference" (1) "any and all criminal convictions (excluding minor traffic offenses)" or (2) "any sentence(s) or punishment resulting from any and all criminal

---

[27]Having sustained the relevancy objection to Interrogatory 7, there is no need to address other objections to it.

[28]Defendant makes no attempt to show the interrogatory to be unduly broad.  In its responsive brief, it merely argues that although the interrogatory seeks information about "any and all criminal convictions", Plaintiffs have bypassed other viable means, i.e., depositions, to obtain the information. This argument provides no basis to deny the motion to compel fully responsive interrogatory answers.  *See Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 305 (D. Kan. 1996) (recognizing that the federal rules provide cumulative methods of discovery that can be used in any sequence).

[29]*See id.* at 304 (recognizing that objecting party has burden to show undue burden).

[30]Defendant did not reassert any other objections to Interrogatory 6.

conviction(s) (excluding minor traffic offenses)" of Don Brodie (RFP 100-01); Stephan Brodie (RFP 102-03); James Sabzali (RFP 104-05); Jacob Brodie (RFP 106-07); Bro-Tech Corporation (RFP 108-09); Purolite (RFP 110-11); Affiliates, Subsidiaries, Owners, and Executives of Purolite (RFP 112-13, 115); and Witnesses (RFP 114).[31]   RFP 116 and 117 seek "[a]ny and all documents or materials that detail, discuss, show, or reference" (1) "any criminal plea agreement entered into by Mr. Jacob Brodie, Mr. Don Brodie, Mr. Stephan Brodie, Mr. James Sabzali, Bro-Tech Corporation, and/or Purolite"[32] or (2) "an indictment or criminal accusation lodged against [them]."[33]

In response to each of these requests, Defendant asserted essentially the same response:

Purolite incorporates by reference its General Objections.  Purolite further objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the attorney work product immunity, or any other applicable privilege or immunity.  Purolite objects to this request to the extent that seeking "[a]ny and all documents" is unduly broad and burdensome and calls for information not reasonably calculated to lead to the discovery of admissible evidence.  Purolite objects to this request because it calls for irrelevant and unfairly prejudicial information.[34]

For RFP 114, Defendant also objected that the request was premature.[35]  For RFP 117, Defendant objected that the phrase "against by" is vague, ambiguous, and overly broad.[36]

---

[31]*See* ECF No. 296-6 at 34-41.

[32]*See id.* at 42.

[33]*See id.*

[34]*See id.* at 34-43.  For RFP 102, 103, 116, and 117, Defendant also asserted:  "Purolite further objects to this request as vague and ambiguous because Purolite is not aware of any individual named 'Stephan Brodie.'"  Defendant does not reassert this objection in response to the motion, and as already mentioned, the Court will not differentiate between Stephan and Stefan Brodie.

[35]*See id.* at 41.

[36]*See id.* at 43.

### A. Privilege

In a single sentence in response to the motion to compel, Defendant reasserts its objection that the requests seek production of privileged documents.[37]  It is clear from Plaintiffs' memorandum supporting their motion that they are not seeking production of any documents that are protected by privilege.[38]  They invite Defendant "to supplement its privilege log", if there are responsive documents that are privileged.[39]  In addition, they only seek an order to compel "Defendant to produce all non-privileged responsive documents."[40]  Accordingly, the Court finds privilege is no longer at issue with respect to the requests for production.

### B. Relevancy

Defendant also reasserts its objection that the requests seek irrelevant documents.[41]  For the reasons stated with respect to Interrogatory 6, the requests seeking information about convictions of Jacob Brodie, Don Brodie, Stefan Brodie, James Sabzali, and Defendant (whether under the name Bro-Tech Corporation or Purolite) appear to seek relevant documents.   For similar reasons, the requests seeking information about sentences and punishments of Defendant and those individuals appear to seek relevant documents.[42]  Defendant has not carried its burden to show that these

---

[37]Mem. Opp'n at 21.

[38]*See* Mem. Supp. at 11, 13.

[39]*See id.* at 11.

[40]*See id.* at 13.

[41]Mem. Opp'n at 2.

[42]Rule 609(a)(1) of the Federal Rules of Evidence makes the length of punishment relevant for admissibility purposes in some circumstances.  Although Rule 609(a)(1) implicitly limits the relevancy of sentences and punishment to whether "the crime was punishable by death or imprisonment

requests seek irrelevant documents.

The relevancy of RFP 112 to 117, however, is not readily apparent.  While convictions, sentences, and punishments may be relevant in this case, the Court sees no relevance to information about criminal plea agreements, indictments, or criminal accusations.  In addition, the relevancy of RFP 112 to 115 for unidentified entities and witnesses is not apparent for the reasons stated with respect to Interrogatories 6 and 7.  Layne has not carried its burden to show the relevance of RFP 112 through 117.  The Court sustains these objections..

### C.  Overly Broad

Defendant also briefly reasserts its objection that the requests are overly broad.[43]  Requests 100 to 111 are broadly worded.[44]  But the Court does not find them facially objectionable on grounds they are overly broad.[45]  Defendant has not carried its burden to show that the requests are overly broad.[46]

### IV.    Deposition Testimony

In response to various questions for information about criminal convictions, defense counsel

---

in excess of one year under the law under which the witness was convicted", the length of an imposed sentence provides a relevant indicator of whether the requirements of Rule 609(a)(1) may be satisfied.

[43]Mem. Opp'n at 21.

[44]Because the Court has sustained relevancy objections against RFP 112 to 117, those requests are no longer at issue.

[45]*See Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005) (discussing when requests are facially objectionable as overly broad); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 665-66 (D. Kan. 1999) (same).

[46]*See Mackey v. IBP, Inc.*, 167 F.R.D. 186, 199 (D. Kan. 1996) ("The party resisting discovery has the burden to show the discovery to be overly broad or unduly burdensome.")

Matthew Levine objected on grounds of relevancy, stale conduct (seventeen years in the past), cumulativeness, and intent to confuse and inflame the jury and harass the witness, and instructed Don Brodie not to answer.[47]  Plaintiffs immediately stated that the failure to answer the questions may prompt a motion to compel.[48]

Plaintiffs first contend that defense counsel improperly instructed the deponent not to answer questions about his or Purolite's criminal record.[49]  They ask the Court to order Mr. Brodie to appear for a supplemental deposition so as to answer questions regarding his criminal background and that of the defendant.[50]

The governing rule regarding depositions in federal cases, Fed. R. Civ. P. 30, establishes a standard procedure for objecting to questions or other aspects of the deposition.[51]  Rule 30(c)(2) requires objections to "be noted on the record," but recognizes that "the examination still proceeds; the testimony is taken subject to any objection."  A deponent may be instructed not to answer a question "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."[52]

There is no dispute that neither privilege nor a court limitation justifies directing Mr. Brodie not to answer the questions propounded to him.  With respect to the third basis for instructing a

---

[47]Tr. Dep. Don Brodie at 69-79.

[48]*Id.* at 70-72.

[49]Mem. Supp. at 3-5.

[50]*Id.* at 5.

[51]Fed. R. Civ. P. 30(c)(2).

[52]*Id.*

deponent not to answer, Plaintiffs argue that the questioning did not warrant a Rule 30(d)(3) motion, and in any event, defense counsel did not invoke that justification for his directions.[53]  Defendant, on the other hand, asserts that it properly sought to limit the deposition pursuant to Rule 30(d)(3) in a manner that facilitated the discovery process and allowed for the remainder of the deposition to proceed.[54] It characterizes its chosen procedure as reasonable and consistent with Rules 30(c)(2) and (d)(3)(A) given the clear indication that Plaintiffs intended to compel answers to the unanswered questions.[55]

Despite the above characterizations and assertions to the contrary, counsel did not invoke or attempt to present a motion under Rule 30(d)(3) at the deposition.[56]  Counsel simply directed the deponent not to answer after asserting several objections, none of which were based on privilege.[57] In doing so, counsel acted improperly.[58]  "Objections to a line of questions upon deposition are not grounds to withhold a response, unless the objection is one of privilege."[59]  Although interrogation that "becomes unreasonably annoying, embarrassing, or oppressive, or proceeds in bad faith" may provide reason for moving for protection under Rule 30(d)(3),[60] Defendant did not pursue such a pro-

---

[53]Mem. Supp. at 4-5.

[54]Mem. Opp'n at 4, 13.

[55]*Id.*

[56]*See* Tr. Dep. of Don Brodie at 69-79.

[57]*See id.*

[58]*See RTC v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995); *Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625962, at *12 (D. Kan. Oct. 5, 1995).

[59]*Audiotext Commc'ns Network, Inc.*, 1995 WL 625962, at *12.

[60]*See id.*

13

tective order.  Defense counsel should have stated his objections for the record, and allowed the deponent to answer.[61]  As requested by Plaintiffs, Mr. Brodie shall appear for a supplemental deposition to answer questions regarding his criminal background and that of the defendant.

Relying on the following language from a well-respected legal treatise, Defendant contends that it complied with the language and spirit of Rules 30(c)(2) and (d)(3):

> Although there is thus a substantial preference for requiring that deponents apply to the court for protection rather than simply refusing to answer questions, it is to be hoped that the courts will take a realistic view of the conduct of depositions rather than foreclose deponents' objections in response to motions to compel answers. Rule 37(a) is expressly designed to cover the case of the deponent who appears but refuses to answer certain questions.  It would be unduly draconian to penalize the deponent for failure to make a motion under Rule 30(d), especially since there will be many instances in which he or she will consider a question improper though unable to make the showing of bad faith, annoyance, or otherwise, required on a Rule 30(d) motion.[62]

The quoted paragraph, however, does not support the contention.  In general, § 2116 discusses motions to terminate or limit examinations, including motions filed pursuant to Rule 30(d)(3).[63]  The paragraph immediately preceding the quoted one recognizes the 1993 amendments which specify "that instructions not to answer be limited to protecting privilege, implementing a limitation on evidence directed by the court or to permit a motion to be made for a protective order under Rule 30(d)(3)."[64]  After noting "a substantial preference" for bringing matters before the court pursuant

---

[61]*See id.*

[62]Mem. Opp'n at 14 (relying on 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2116 (3d ed. 2010) [hereinafter Wright & Miller]).

[63]*See* Wright & Miller § 2116.

[64]*Id.* at 588-89.  That paragraph also recognizes "[a]n alternative method by which a court ruling upon the propriety of the examination may be obtained is by refusal of the witness to answer particular questions, thus provoking a motion under Rule 37(a) to compel an answer." *Id.* at 588.

to Rule 30(d)(3), the paragraph quoted by Defendant merely recognizes Rule 37(a) as another avenue to court review of a failure to answer questions. Outside of the three bases set out in Rule 30(c)(2), nothing in § 2116 indicates that it is proper to direct a deponent not to answer a question.

Furthermore, the footnote associated with Defendant's quoted text supports a "Realistic View" that courts not hold a deponent "in contempt for angrily leaving deposition after ten minutes" when "the adverse party's attorney continually pursu[ed] a line of questioning known to be inappropriate."[65] The footnote provides no support for directing a deponent not to answer. The realistic view envisioned by the treatise does not mean that the courts ignore improper instructions from counsel to a deponent.

Defendant also does not mention § 2113 of the same treatise, which directly addresses instructions not to answer.[66] That section recognizes that "[e]vidence objected to must be taken subject to the objection", and if a deponent refuses to answer, the asking party may move to compel an answer under Rule 37.[67] It then recognizes that Rule 30(c)(2) "forbids instructions to the deponent to refuse to answer a question unless necessary to protect a privilege, to enforce a limitation on evidence imposed by the court, or to permit the making of a motion for a protective order under Rule 30(d)(3)."[68] It also expresses hope that courts apply Rule 30(c) "in a realistic way, rather than precipitously foreclosing grounds for objection when further answers are sought by a motion to compel and

---

[65]*Id.* at 589 n.17.

[66]*See id.* at 589 n.16; Wright & Miller § 2113, at 554-56.

[67]Wright & Miller § 2113, at 544-45.

[68]*Id.* at 554-55.

no protective order motion has been made."[69]  Section 2113 negates Defendant's contention that it complied with the spirit and language of Rule 30(c)(2) and (d)(3).

The Court sees no inconsistency with its ruling herein and the text quoted by Defendant.  It is improper for counsel to direct a deponent not to answer questions except on the three bases provided in Rule 30(c)(2).[70]  "It is inappropriate to instruct a witness not to answer a question on the basis of relevance."[71]  The courts may properly sanction an attorney for unjustifiably instructing a deponent not to answer questions.[72]  Rule 30(d)(2) grants the courts discretion to impose appropriate sanctions "on a person who impedes, delays, or frustrates the fair examination of the deponent." Sanctions may also be premised on 28 U.S.C. § 1927 or, if ordered payable to the court, on "the court's inherent power to impose a variety of sanctions to regulate its docket, promote judicial efficiency and deter frivolous filings."[73]  Sanctions may also be premised on Fed. R. Civ. P. 37(a)(5) upon ruling on a motion to compel.

Counsel had no justifiable basis for instructing Don Brodie to not answer questions at his deposition.  In response to the first question asking about prosecution for trading with the enemy, counsel objected that such questions were irrelevant, related to stale conduct, cumulative, and were

---

[69]*Id.* at 559.  The footnote associated with the text indicates that it is generally inappropriate to direct a deponent not to answer a question, but counsel may properly prepare a witness for deposition by explaining that hearsay is not a fact and instructing the witness "in advance of deposition" not to speculate or to answer "unless you know it for a fact".  *Id.* n.31.

[70]*See RTC v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995); *accord Audiotext Commc'ns Network, Inc.*, 1995 WL 625962, at *12.

[71]*Dabney*, 73 F.3d at 266.

[72]*Id.* at 267.

[73]*Id.*

16

intended to confuse and inflame the jury and harass the witness.  None of those objections, however, justify instructions not to answer.  If counsel believed that the deposition was "being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent", the proper procedure would have been to move to terminate or limit the deposition under Rule 30(d)(3).  By directing the deponent not to answer in direct contravention of Rule 30(c)(2), counsel engaged in conduct sanctionable under Rule 30(d)(2).[74]  Unjustified instructions not to answer deposition questions may also warrant sanctions under 28 U.S.C. § 1927 or the inherent powers of the Court.[75]

In this instance, Rule 30(d)(2) provides ample basis to sanction Mr. Levine as the person who impeded, delayed, or frustrated the fair examination of Don Brodie.  Consequently, Defendant shall produce Don Brodie for supplemental deposition at the expense of Mr. Levine.  If the deposition does not take place in the Kansas City metropolitan area, Mr. Levine will be financially responsible for the time and expense incurred by Plaintiffs' counsel to travel for the supplemental deposition.[76]  Except for the potential travel time mentioned in the preceding sentence, Mr. Levine will not be financially responsible for attorney fees for Plaintiffs' attorneys.  Mr. Levine will be personally responsible for the typical expenses incurred by Plaintiffs resulting from the supplemental deposition.  No other sanction is warranted on the facts before the Court.

Although the Court has granted the motion in part and denied it in part, an award of expenses or fees on the motion to compel is inappropriate under the circumstances.[77]  Each party shall bear

---

[74]*Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 594 (S.D. Tex. 2011).

[75]*Dabney*, 73 F.3d at 266-67.

[76]*See Audiotext Commc'ns Network, Inc.*, 1995 WL 625962, at *13.

[77]*See* Fed. R. Civ. P. 37(a)(5)(C).

its own attorney fees and expenses incurred in connection with the motion to compel.  In accordance with Fed. R. Civ. P. 37(a)(5)(C), however, the Court issues an order under Rule 26(c) to protect Don Brodie from the annoyance or embarrassment of answering the following question propounded at his prior deposition:  "Did you ever wear an ankle bracelet for trading with the enemy?"  The Court fails to find any relevancy between this particular question and any aspect of the subject matter of this case.  It appears to have been a ploy merely to embarrass or annoy the deponent.  Plaintiffs shall not ask that question at the supplemental deposition.

**IT IS THEREFORE ORDERED** that Plaintiffs Layne and SenGupta's Motion to Compel Discovery (ECF No. 295) is granted in part and denied in part.  Defendant shall forthwith fully answer Interrogatory 6 with respect to Defendant (whether under the name Bro-Tech Corporation or Purolite), Jacob Brodie, Don Brodie, Stefan Brodie, and James Sabzali.  It shall forthwith produce all non-privileged documents in its possession, custody, or control that are responsive to Requests for Production 100 to 111.  If it withholds privileged documents from production, it shall comply with Fed. R. Civ. P. 26(b)(5) by supplementing or providing a privilege log.  As soon as practical for all parties and the deponent, it shall produce Don Brodie for a supplemental deposition at the expense of Mr. Levine as set out more fully herein.

Dated in Kansas City, Kansas on this 6th day of October, 2011.


/s/ Gerald L. Rushfelt
Gerald L. Rushfelt
United States Magistrate Judge